[*] HODGDON, *Petitioner for partition, versus* WIGHT *& al.*

If, from the payment of State taxes for a succession of years, there arises a presumption that the tax of an earlier year had been paid, that presumption may be repelled by proof.

In ascertaining whether the tax of such earlier year was or was not paid, the books kept by the State Treasurer, may be received in evidence.

The assessment and collection of State taxes for several successive years after a forfeiture to the State had accrued for the non-payment of a previous year, are not to be deemed a waiver of the forfeiture.

Hodgdon *v.* Wight.

Such subsequent assessments and collections might, perhaps, be considered a pledge that the State would still allow the proprietor to redeem against the forfeiture.

A statute, passed several years after such a forfeiture had accrued, and allowing the land to be redeemed within a limited time, may be taken into the account to show that the State never intended to preclude the proprietor from redeeming.

But, under the lights of such a statute, the State, by continuing to assess and collect the subsequent taxes, cannot be considered to have waived its claim to the forfeiture further than it has manifested its intention to do so by its enactments.

In relation to a sale by the Land Agent of property belonging to the State, which he was authorized to make only upon certain prescribed public notifications, it is competent for the Legislature to ratify the sale and confirm the conveyance, although the prescribed notifications had not been given.

On Report from *Nisi Prius*, Appleton, J., presiding.

Petition for Partition.

The petitioner represents, that he is seized in fee simple of 3593 acres in township letter B, in the second range of townships west from the east line of the State, and in the county of Aroostook, holding the same in common and undivided with persons to him unknown, and prays that his portion of the township may be set off to him in severalty.

Public notice having been given of the pendency of the petition, Lothrop Wight and William A. Brown appear, and by brief statement represent, that under a deed from the Ocean Bank, dated in Dec. 1846, they are the owners in fee of 6244 acres in common and undivided with others in said township; that said bank obtained its title to 2271 acres in May, 1837, and to 3972 acres in Feb'y, 1843. · Said respondents, therefore, say that the partition prayed for ought not to be made.

The petitioner, by counter brief statement, asserts that out of said 3972 acres (constituting a part of the land claimed by the respondents,) he, the petitioner, is entitled to said 3593 acres, and deraigns title to himself under a sale and conveyance by the State on April 29, 1849, to G. W. Stanley, for the non-payment of State tax thereon for the year 1842.

In support of his title, the petitioner reads from the Tax

Hodgdon v. Wight.

Act of 1842, showing an assessment of $17,40, on that township, as its proportion of the State tax; —

Also three copies of the Weekly Age, (the State paper,) dated April 29, 1842, May 6, 1842 and May 13th, 1842, each containing the State Treasurer's advertisement, bearing date of April 22, 1842, and giving public notice of the assessment and amounts of the State tax of 1842, upon the unincorporated places of the State, and showing that the State tax upon township letter B was $17,40; and also representing, that the several unincorporated tracts were liable to the State for the payment of said assessment into the State treasury, together with interest thereon, at the rate of twenty per cent. per year, from the expiration of one year from the date of said assessment, and that any of the tracts so assessed would be forfeited to the State, unless such assessment, with its interest, should be paid in four years from the date of the advertisement.

This advertisement was made pursuant to the R. S. c. 14, and presents correctly the provisions of that statute, applicable to the case.

[In August, 1848, an Act was passed, containing the following provisions : —

"SECT. 1. It shall be the duty of the Treasurer of State, within thirty days from the approval of this Act, to publish a list of all tracts of land forfeited to the State for non-payment of taxes, specifying the amount of taxes due on each, and the time allowed by this Act to pay the same, and hereafter, annually, on the first Monday of September, the Treasurer shall publish a similar list of all tracts of land which may then have become forfeited, for the term of six months, once each week, in the Eastern Argus, Portland Advertiser, Augusta Age, Kennebec Journal, Bangor Democrat, and Bangor Courier, or as many of said papers as shall continue to be published.

"SECT. 2. Any owner, tenant in common, or other person having a legal interest in any tract of land so forfeited, or that may become forfeited to the State for non-payment of

Hodgdon *v.* Wight.

taxes, may pay to the Treasurer at any time previous to the advertisement aforesaid, or on or before the first day of March of each year, after said lands are advertised as aforesaid, the proportion due on his part of any tract of land of all taxes, interest and cost then due, and the Treasurer's receipt shall discharge his part of said tract.

"SECT. 3. Immediately after the first day of March aforesaid, the Treasurer shall furnish the Land Agent a list of all tracts or townships of land, which have been advertised, as provided in this Act, on which the taxes, cost and interest have not been all paid; and the Land Agent shall within sixty days from that time sell the same at auction, having first given public notice of the time or times and place or places of sale, by publishing such notice three weeks successively in the State paper, and in some paper in the county where such land lies, if any paper is published therein," &c.]

The petitioner then read from the records of the land office the return made on March 23, 1849, to the Land Agent by the treasurer, setting forth his proceedings under the Act of 1848, and showing that he had advertised as said Act requires, and exhibiting a list of the forfeited lands, with the amounts due thereon respectively. This exhibit showed that there remained due on township B, on the State tax of 1842, $3,05, and $3,66, interest.

The record from the land office further showed that, on April 30, 1849, he sold at public auction such of the forfeited lands, as had not by that time been redeemed. This record however did not show that the Land Agent had previously advertised the sale in any newspaper in the county of Aroostook, nor did it show that no newspaper was therein published.

The petitioner then read the deed from the Land Agent to Stanley, the purchaser, "conveying all the right which the State had in 14593 acres in township B, being all the land in said township on which the taxes had not been paid," subject to the proprietor's right of redeeming. Also a deed of the same from Stanley to the petitioner, dated May 1, 1850.

Hodgdon *v.* Wight.

The respondents read a transcript from the ledger of the State Treasurer, showing that the State tax of 1842 on township B was $17,40 ; and that there had been paid on account of it as follows : —

1842, July 28. By Casco Bank,                                        $8 70
1843, Feb. 11. L. Pierce for Ocean Bank, (2371 acres,) 1 80
  "   May 29, W. Bartlett,                          1656   "   1 26
  "   Aug. 31, Hale & Titcomb,                  3420   "   2 59
1849, Oct. 8, Bal. by Land Ag't, sold under forfeiture, 3 05

$17 40

On Aug. 22, 1848, Leonard Pierce, as agent of the Ocean Bank, addressed a letter to Wm. Caldwell, a clerk in the Treasury office, requesting to be informed " the proportion of tax on 2271½ acres from Aug. 14, 1841 to Feb'y 14, 1843 ; and afterwards to the present year on 6244 acres, including interest, and all and every claim of the State arising from taxes assessed."

To that application Mr. Caldwell replied, under date of Aug. 26, 1848, as follows : —

" Yours of the 22d inst. in relation to taxes is received, and annexed. I forward you a memorandum of the amount due on the number of acres, and for the year specified on letter B, R. 2, Aroostook county. You have paid the State tax for 1842, and the county tax for 1841 and 1842.

| Acres. | | State Tax. | Interest. | | County Tax. | Interest. |
|---|---|---|---|---|---|---|
| 2271, | 1841, | $ ,80, | $2,26, | | | |
| 6244, | 1843, | 4,85, | 4,03, | 1843, | $9,82, | $8,83 |
| " | 1844, | 3,81, | 2,53, | 1844, | 10,94, | 7,47 |
| " | 1845, | 5,33, | 2,37, | 1845, | 15,60, | 6,73 |
| " | 1846, | 6,55, | 1,83, | 1846, | 16,70, | 3,60 |
| " | 1847, | 3,26, | ,27, | 1847, | 18,50, | |
| " | 1848, | 6,55, | | 1848, | 13,00, | |

amounting in all, (including fifty cents for ex's,) to the sum of $157,63."

This amount, $157,63, was accordingly paid by Mr. Pierce into the treasury.

Hodgdon *v.* Wight.

The case was submitted to the Court for the rendition " of such judgment as to right and justice may appertain."

*Cutting,* for the petitioner.

The only subject for inquiry is, whether the State tax of 1842 was duly assessed and the subsequent proceedings legal ; if so the petitioner must prevail.

To show the assessment, we offer a certified copy of the original Act, " To apportion and assess a tax on the inhabitants of the State of Maine, for the year A. D. 1842," so far as it relates to the county of Aroostook, and also refer to the original act, approved March 18, 1842.

In that Act we find the township taxed at $17,40.

By R. S. c. 14, § 1, it was " the duty of the State Treasurer to cause the said assessment to be published in the newspaper of the printer of the State, three weeks successively, the last publication to be within three months from the day on which such assessment was made by the Legislature."

This duty the Treasurer performed, under date of April 22, 1842, in the Age of April 29. May 6 and 13, A. D. 1842.

By sect. 9 of the same Act, it is provided, that — " If any State tax upon any township or tract aforesaid, which shall have been advertised in the manner prescribed in the first section, together with the interest thereon, as above required, shall not have been paid into the State treasury, for the space of four years next following the Act of assessment of the Legislature, &c. said tract or township shall be wholly forfeited and the title thereof shall vest in the State, free and quit from all claims by any former owner, and the same shall be held and owned by the State by a title, which is hereby declared to be perfect and indefeasible."

Was that tax then upon that township wholly paid within the four years? If not, that portion which remained unpaid, became forfeited to the State, *ex vi termini* of the Act."

By § 51 of c. 14, any part owner may pay his proportion of a tax, and free such proportion from any lien created by such tax.

Such appears to have been done by a portion of the owners of this township.

The township appears by the plan to be six miles square, and consequently contains 22040 acres, exclusive of the 1000 acres reserved for public uses.

Now it appears by the State Treasurer's ledger, that for the State tax of 1842 —

| | | |
|---|---|---|
| Casco Bank paid one-half, which is | 11020 | acres, |
| L. Pierce for Ocean Bank, | 2371 | " |
| W. Bartlett, | 1656 | " |
| Hale & Titcomb, | 3420 | " |
| In all | 18467 | |
| | 3573 | |
| | 22040 | |

leaving a balance of 3573 acres on which the tax of 1842 has never been paid, and which consequently have become forfeited to the State, and which the petitioner claims.

That tax has never been paid, and the respondents by all their receipts offered, show none touching the State tax of that year on the said 3573 acres.

Mr. Pierce, an agent of the Ocean Bank, was directed in 1848, long after the land had been forfeited to the State, to pay all unpaid taxes on 6244 acres; and he corresponded with a clerk in the Treasury office upon that subject.

The specific request of Pierce in his letter was, " I want to know the proportion of tax on 2271½ acres from August 14, 1841, to Feb. 14, 1843, and *afterwards* to the present year on 6244 acres," &c.

In *answer*, the clerk very properly replied, that he forwarded him a memorandum *on the number of acres and for the year specified*, and adds you have paid the state tax for 1842.

What tax? the tax of 1842 on 2371 acres, sometimes named in this case 2371 acres, and at other times only 2271 acres, a mistake probably as to 100 acres, but we give them the augment to their brief statement.

Hodgdon *v.* Wight.

By the respondents' brief statement in 1842, the Ocean Bank only owned in the township 2272 acres, and in Feb'y, 1843, acquired title to 3972 acres more.

And here probably originates the trouble; on this 3972 acres the taxes of 1842 had not been paid by the said bank's grantor.

Now the respondents having failed to show the payment of the State tax on 3972 acres for 1842, it became forfeited to the State and subject to their control.

That land under the Act of 1848, c. 65, having previously been advertised by the State Treasurer, was returned in a list to the Land Agent, who sold the same to G. W. Stanley.

And whether those officers in their proceedings complied with the law or not, it is wholly immaterial.

For, by statute of 1852, it is enacted that : — " Purchasers of lands, sold for alleged forfeitures to the State for non-payment of taxes, shall have no claim against the State for any defect of title to lands hereafter sold, or under any pretext whatever ; but the deeds which have or may be given by the Land Agent shall vest in the grantee all the interest of the State in the lands therein described and no more ; notwithstanding any irregularities in the notices or failure to comply with the provisions of the Acts under which said sales were made."

So that although there was included in the Treasurer's list 14593 acres as forfeited, and that quantity sold to Stanley, that quantity *included* the 3972 acres belonging to the State, and all the State's interest passed by the Land Agent's deed.

*T. D. J. Fuller,* for the respondents.

The petitioner relies upon a tax title, acquired from the State, by reason of the non-payment of a " State tax" assessed in 1842.

The respondent shows title in himself of 6243 acres. Petitioner claims 3972 out of this tract.

The petitioner must show, to make a valid title, " that the provisions of law preparatory to, and authorizing such sales, have been punctiliously complied with." " Great strictness is

required." *Brown* v. *Veazie*, 25 Maine, 362; *Mathews* v. *Light*, 32 Maine, 309.

Independent of the foregoing principle, there are facts, which appear in this case, that will incline the Court to the utmost strictness, in requiring a "punctilious compliance" with the provisions of law.

Our first position is; the tax of 1842 was paid.

Second; the Land Agent had no authority to sell.

Third; the requirements of the law have not been complied with.

1. The tax of 1842 was paid.

The respondent does not produce any receipt of payment for that year, but he does show receipts for the five consecutive subsequent years.

The presumption of law, arising from the production of these receipts is, that the previous taxes had been paid. And more especially is this presumption violent, because it shows that the State received the money, after the land was forfeited, if such payment had not been made. Receipt for a quarter's rent affords presumptive evidence of the payment of previous rent. 15 Johns. 479.

This legal, presumption is further strengthened by the fact, that the agent of the respondents wrote to the Treasurer for a list of all the taxes due on the land, and was informed that the taxes due were all subsequent to that year. If there had been any error, good faith required that the respondents, or their agent, should have been notified of such error.

The respondents desired and intended, to pay all taxes which had been imposed on their land.

The State was bound, so to apply the money, as to prevent a forfeiture. It could not assess and receive pay for land, and at the same time, treat the land as forfeited to and invested in itself.

2. The Land Agent had no authority to sell the land.

*First*, because, as has been shown, the taxes were paid.

*Second*, if any forfeiture of the land accrued to the State,

it was in April, 1846, four years after the date of the adver-
tisement.

The taxes were paid in September, 1848, more than two
years after the forfeiture accrued, if any.

This was a waiver of any previous forfeiture.

If it should be said, the receipt does not bind the State,
the reply is, the assessment which preceded it in every in-
stance, is the act of the State.

If then, the petitioner should rely upon a title vested in
the State, prior to September, 1848, our reply is, receiving
pay for the taxes, and assessing the lands after the forfeiture,
if any occurred, is a distinct waiver of it.

*Third*, the Land Agent had no authority to sell, because,
the Treasurer did not certify the list of delinquent lands, im-
mediately after the first day of March, to him. He certified
on the 27th day of March. This is not immediately; imme-
diately after such a day, could not be extended beyond the
next day. See case of attachment, in Massachusetts, where
one minute past 12 o'clock, and immediately after 12 o'clock,
were held to be simultaneous. This was not a compliance
with the provisions of the statute, either in the letter or sub-
stance. If the Treasurer could suspend 26 days, he could as
many months. Time is as material in this case, as it is in
many other cases, where the law requires different acts to be
performed by officers; and a failure has been held fatal, where
there was not a punctilious compliance with the statute.
*Hobbs* v. *Clements*, 32 Maine, 71.

3. The requirements of the law, in the proceedings of the
sale, have not been complied with, in the following partic-
ulars : —

*First*, the Treasurer did not advertise the lands, within
thirty days from the tenth day of August, 1848.

*Second*, the Treasurer did not certify the delinquent lands
immediately after the first day of March. .

*Third*, the Land Agent did not advertise the lands in the
county of Aroostook.

*Fourth*, the Land Agent did not publish the same notice in the county papers, that he did in the State paper.

*Fifth*, the Land Agent did not make return to the Treasurer for what sum he sold the land. 26 Maine, 233; 32 Maine, 558.

SHEPLEY, C. J. — The title of the petitioner is derived from the State, and its title from a forfeiture of the title of the former owners, occasioned by neglect to pay a State tax assessed upon the lands for the year 1842.

An objection is made, that the State could not thus acquire a title, because the State tax for that year has been paid.

The presumption arising from the payment of all taxes assessed for subsequent years is relied upon as proof of it. This presumption may be rebutted. A transcript from the books of the Treasurer of the State, exhibiting the payments made for taxes assessed upon the township and the times when and by whom they were made, was received as testimony. The receipts introduced by the respondents correspond to the entries made on those books. There is no proof, that any payments made were omitted to be entered or that any error was committed in making the entries.

Under such circumstances the presumption cannot prevail.

The State, it is said, was bound to apply the money paid so as to prevent a forfeiture.

There is no proof, that it was not applied as directed. Receipts were given stating particularly the purposes for which it was received. No objection to the appropriation appears to have been made.

It is also insisted, that the State could not assess the land as owned by others, and receive payment from them for such taxes, and yet claim to be itself the owner of those lands by forfeiture. There would have been an inconsistency in such proceedings, if there had been no intention to permit the owners to redeem. The State, however, does not appear to have insisted upon forfeitures, when it could obtain payment without. Such a course of proceedings might, perhaps, be

properly regarded as a pledge, that the owners would be permitted to redeem. By the Act approved on August 10, 1848, the owners of lands forfeited, were not only permitted to redeem them from the State, until they were finally sold at auction by the Land Agent, but provision was made, that they might redeem from the purchaser at any time within one year after the sale. Under such circumstances, by continuing to assess them, and to receive payment of taxes, the State cannot be considered to have waived any claim to a forfeiture further than it has manifested an intention to do so by its enactments.

The State having offered such facilities for a redemption, the Ocean Bank, as owner of 6244 acres, appears to have intended to redeem by payment of all taxes assessed upon them with the accrued interest, and to have employed Leonard Pierce to make such payment. He addressed a letter under date of August 22, 1848, to a clerk in the office of the Treasurer of the State, desiring to be informed of "the proportion of tax on 2271½ acres from August 14, 1841, to February 14, 1843, and afterwards to the present year on 6244 acres, including interest, and all and every claim of the State arising from taxes assessed."

The clerk, in an answer, under date of August 26, 1848, forwarded a memorandum "of the amount due on the number of acres, and for the year specified." The State tax for the year 1841 is therein stated to be due on 2271 acres; and the State and county taxes to be due on 6244 acres for the year 1843, and for several subsequent years; and the letter states, "You have paid the State tax for 1842, and the county tax for 1841 and 1842."

This is regarded by counsel as a statement, that the State tax for the year 1842, had been paid upon the 6244 acres. There is much doubt, whether it can be justly so regarded. It does not state upon what land the State tax for the year 1842 had been paid. That can only be inferred. The specific inquiry made of him respecting the 6244 acres, was limited to taxes after Feb'y 14, 1843. Before that time, his inquiry

had reference only to the 2271½ acres, and the statement of the clerk would seem to be more appropriate as an answer to that inquiry.

But it is said, he asked for information of " all and every claim of the State, arising from taxes assessed." This language was used in connexion with the words " including interest, and all and every claim," &c., and it might have been considered, and perhaps properly, by the clerk as asking only for information of all other charges or claims, beside interest, to be annexed to the interest on the taxes, respecting which a specific inquiry was made, and not as asking, if there were other taxes due on any of the lands, for 'other years not named. The obscurity or uncertainty in the letters between the agent of the owners and the clerk, may be the occasion of a serious loss, but the right of the State to lands already forfeited, cannot be affected thereby, even if the clerk should be regarded as having made a misstatement respecting the taxes of 1842.

After the State had acquired a title by forfeiture, nothing but its own act, or that of some authorized agent, could deprive it of that title.

It is further insisted, that the Land Agent had no authority to sell and that his proceedings were not in conformity to law.

The respondents in such case would fail to exhibit any title to the land claimed by the petitioner, and to prove the allegations made in their brief statement.

If the State had acquired a title, that of the purchaser from it has been admitted, and all defects in the proceedings cured by the Act approved on April 23, 1852, which provides, that any deeds given by the Land Agent, for lands sold for alleged forfeitures to the State, shall vest in the grantee all the interest of the State, notwithstanding any irregularities in the notices or failure to comply with the provisions of the Acts under which said sales were made. *Judgment that partition be made as prayed for.*

TENNEY, HOWARD, RICE and APPLETON, J. J., concurred.