### ARGUED AND DETERMINED IN THE

# SUPREME COURT

#### OF THE

## STATE OF WISCONSIN.

Heard and Determined, June Term, 1859.

———————————

## ERNEST KREBS, Appellant, *vs.* JAMES H. DODGE.

### APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard June 25.]                    [Decided June 28, 1859.

### *School and University Lands—School Land Commissioners Mortgages—Sales—Quia Timet.*

Section 87 of the act concerning " School and University funds," 1849, which, provides that the School Land Commissioners shall make sale of forfeited mortgaged premises to the highest bidder, is mandatory in its nature; and it may be doubted whether, under that section, and without the limitation of the 88th section, the land could be sold for less than the whole amount due on the mortgage.

Section 88, of the same act, makes it the duty of the commissioners, in case no other person bids off the mortgaged premises, to bid off the same for the use of the proper fund, and make a sale to the state ; and they are not required, under this section, to bid the full amount due, but can exercise their discretion as to the amount.

When the commissioners have bid off the mortgaged premises the equity of the mortgagor is cut off ; and if the land does not bring the amount due, he is liable for the balance due, after a re-sale by the state.

Krebs vs. Dodge.

It is the duty of the commissioners to re-sell the land bid off by the state, and pay over to the mortgagor the overplus, if any, exceeding the principal, interest, damages and costs, due from him to the state, notwithstanding his equity of redemption was gone.

An averment in the answer that the lot in question was offered for sale at auction, that no one bid the amount due, and therefore the commissioners bid off the same, and it was struck off to the state, is not proved by a memorandum made for the use and convenience of the clerks and others engaged in the school land office. Such a memorandum is not a compliance with the provisions of § 91. and cannot be made evidence of the title to real estate.

So a mere memorandum of the re-sale by the state is not a compliance with the provisions of the law, which requires a statement of the sale to be made out and signed by the commissioners and recorded in their office.

In an action to quiet title to real estate, the averment of possession in the plaintiff is made out by proving that the land was in the possession of the tenants of the plaintiff at the time of suit brought.

The complaint in this action shows that Krebs is the owner of lot 3, in block 11, in the fifth ward of Milwaukee, and in possession and occupancy of the same; that it is worth $5,000; that on the 25th of June, 1850, one Barzilla Throop owned the lot; and borrowing money of the State, he mortgaged it to secure the payment of $400 and interest, and then sold it to the plaintiff; that the interest due on the mortgage was paid up to 1856; that Herman Haertel, a subsequent mortgagee, agreed to pay the interest in 1857, and the complainant was informed that it was so paid; that on the 18th of November, the Secretary of State, State Treasurer, and Attorney General, commissioners of the school lands, pretended to make sale of the lot as forfeited mortgaged land, and that at the sale the defendant, Dodge, purchased it for the sum of $563 34.

The complaint further alleged that the commissioners did not, previous to the sale, advertise the land for sale in a newspaper printed in Milwaukee county, for the time required by law, nor did they give any notice of the sale as required; but they sold in violation of the statute; that the sale is void as to the plaintiff; that a patent was issued by the State dated Dec. 5, 1857, for the lot; that Dodge pretends he paid the amount, $563 34; but he paid no part of the amount, on the contrary the lot was struck off to him, and he made a mortgage on the same lot to pay the amount; yet the mortgage

Krebs vs. Dodge.

purports on its face to be given to secure the payment of $563 34, by him borrowed of the commissioners; that the mortgage of Dodge is for more than $500, and more than the commissioners are authorized to loan to any one person from the school fund, and is therefore void. Yet that Dodge claims he has a perfect title to the lot by means of the patent; that this patent is a cloud upon the title of the plaintiff, and prevents him from selling the premises. The complaint also averred a readiness to pay any moneys which were a lien on the premises, and asked for an account, and demanded judgment, declaring the patent to Dodge void as to the plaintiff; and an injunction to restrain the sale of the land.

The answer of Dodge averred, among other things, to the effect that the mortgage to the state had been made and the money was not paid: that the school land commissioners had the right to declare the land forfeited, and had sold the same for such non-payment. That the commissioners appointed the sale to take place on the 16th of November, 1857, and advertised the same in the manner provided by law, in the Daily Milwaukee News, a newspaper published in the county of Milwaukee; that the advertisement was in proper form, &c.; that at the time appointed for the sale the commissioners proceeded to make sale of all the lands parcel by parcel, which had become forfeited, in each case to the highest bidder for cash, sufficient to pay the amount due the state; that they adjourned the sale from day to day; that this lot was reached in the list, on the 17th of November, 1857, and then publicly offered for sale; and when no one bid the amount due the state, the commissioners bid on the same on account of the proper fund, as by law directed to do, and the lot was struck off for the use of the school fund; and on the 18th day of November, they again offered the lot for sale to the highest bidder for cash, or on a credit of five years with interest payable annually in advance; and the same was then struck off to James H. Dodge at and for the sum of five hundred and sixty-three dollars and thirty-four cents, he being the highest and best bidder therefor, that being the highest sum bidden for the same, and the entire sum chargeable on the lot; that at the time when the lot was sold and bid in by the commissioners, for the state, on the 17th of November, a statement of that sale was made out and signed by the commissioners, and recorded in their office, and a duplicate of the same was left on file in the office of the Treasurer of State, and at the

Krebs vs. Dodge.

time the lot was offered for sale the second time, and sold to Dodge on the 18th of November, a statement of that sale was made out and signed by the commissioners, and recorded in their office, and a duplicate of the same is on file in the Treasurer's office; that soon after Dodge made a mortgage for the lot in proper form to the state, for the proper amount, to secure the payment of said sum of $563 34, at the end of five years from the date thereof; that he paid the interest on the same for one year; that he received a patent for the lot from the Governor, in due form, bearing date December 5th, 1857; and he insisted that by virtue of these proceedings, he obtained a good title to the land in fee simple, and had the right of possession to the same.

The answer further denied that the sale was made in violation of the statute of the state, and without due notice of the sale, and that the patent was not issued fraudulently, &c.; but insisted the contrary to be true. It further denied that he had ever pretended that he had paid $563 34 for the land otherwise than by the note and mortgage aforesaid, or that he had paid any sum, except the expense of the sale and the interest for one year; that it was proper that the transaction should appear on the books of the commissioners as a payment for the land by him, and a re-loan of the money to him; and that it was right for the commissioners to take the note and mortgage.

The answer then demanded specific relief against the claims of the plaintiff, and that his title should be declared perfect.

On the trial before the circuit court it was proved on the part of the plaintiff, that at the commencement of this action, the plaintiff's tenant was in possession of one-half, and the assignee of the lessee of the plaintiff was in possession of the other half of lot 3, mentioned in the pleadings, and had been for some time before, and still was in possession thereof; it was proved that the lot is worth from $3,000 to $5,000, one witness testifying that it was worth $5,000, and another that it was worth from $3,000 to $4,000. The record of the mortgage made by Barzilla Throop to the State of Wisconsin was also read in evidence. It was also proved that subsequent to the execution of the mortgage and before the 16th day of November, 1857, Throop conveyed the premises to James B. Cross, and he conveyed to the plaintiff.

And the defendant offered in evidence, a copy of a patent

issued by the State of Wisconsin, bearing date December 5, 1857, in the usual form for the lot; also the mortgage and note given by Dodge to the state; also a copy of the advertisement of the sale of the lot, as forfeited for non-payment of the interest due, published in the " Milwaukee News," for thirteen weeks, commencing on the 17th of July, 1857, and ending before the date of the sale; also the following papers:

" J. H. Dodge, Lot No. 3, Block 11, in Walker's Point, Fifth Ward of the city of Milwaukee, Milwaukee county:
 "Amount sold for, $563 34. Principal $
 "School fund interest    $3 90.
 "Total to Jan. 1, 1858.    3 90.
  "Nov. 18, 1857,                                    WILLANS."

Also another one, same as above, except signed " C. H." instead of Willans. Also the following:

" J. H. Dodge, Lot No. 3, Block 11, in Walker's Point, Fifth Ward of the city of Milwaukee, Milwaukee county: '
 "Amount sold for, $563 34. Principal $
 "School fund interest    3 90.
 "Total to Jan. 1, 1857,   3 90.
  "Nov. 18, 1857,             CARL HABICH,
                                    "*Dep. State Treasurer.*

 " (Countersigned)
        " D. W. JONES,
                 *Secretary of State.*"

Also the patent issued to, and note and mortgage made by Dodge to the State.

And John Willans, being sworn as a witness on the part of the defendant, testified that he resided at Madison, and was the chief clerk in the School and University Land Office, and had the superintendence thereof; I recollect the sale of the land, under the mortgage of Barzilla Throop, to the State of Wisconsin; I was present at that sale; I assisted the commissioners in making it out, and kept the record of the sale; the interest on the mortgage had been paid up to the first day of January, 1857, and not beyond that time; the whole sum, principal and interest, was due the first day of January, 1857, and no extension given beyond that time. There were a great many tracts of land advertised to be sold by the commissioners on the 16th day of November, 1857; over 100,000 acres, I should think. They were all to be offered on the same day,

Krebs vs. Dodge.

November 16, 1857; the sale was, in all cases, advertised for November 16, 1857, and to be continued till all lands were sold. Most of these lands were 40 acre lots, or village lots. The sale commenced at the time and place advertised. The first day of the sale we sold lands in Adams and Kewanee counties, and we did not get through the sale of the lands on the first day of the sale, because we could not; there was not time. The Secretary of State, at the close of the day's sale, at night, proclaimed that the sale would be adjourned till nine o'clock the next morning. The next morning, the office of the Secretary of State being insufficient to contain the persons attending, the commissioners adjourned the sale from the office of the Secretary of State to the Senate Chamber, which was in the second story of the Capitol, over the office of the Secretary of State, and then occupied by the commissioners of swamp lands, at which place the commissioners proceeded with the sale, and at night, on the 17th day of November, all of the lands not being sold, the Commissioners adjourned the sale until nine o'clock A. M. of the 18th day of November, 1857, at the same place. At nine o'clock on the morning of the 18th, they proceeded with the sales, and on that day the Lot 3, in Block 11, mentioned in the mortgage made by Throop, was cried at public auction by the Secretary of State, and there being no bidders, was struck off to the state, and marked " S." on the sale-book, same as other lands bid in by the State. It was bid in by the commissioners for the school fund.

On the same day after the commissioners had gone through and offered all the lands advertised to be sold, they offered again, to the highest bidder, the lands bid off at that sale by the commissioners, and when Lot 3 was re-offered, it was offered for cash, or on a credit of five years, interest payable annually in advance, on the first day of January. for the amount of the mortgage made by Throop, principal, interest, damages, and costs being $563,34 and the defendant became the purchaser, that being the only and highest bid. There was no cash bid at that time, but there was a bid on credit. Col. Jones offered these lands bid in by the state generally, and asked if there was any one who would bid on any of them. All these proceedings were according to the usual and customary course of business as done by the commissioners.

On cross-examination the witness testified: The Secretary

Krebs vs. Dodge.

of State opened the sale; part of the time Mr. Kuehn was present; the sale lasted for three days only. The amount of forfeited school and university lands offered for sale at this sale, commencing on the 16th day of November, 1857, was greater than that of forfeited mortgaged lands, and both were advertised to be sold at the same time and place. We got through all the sales by 4 or 5 o'clock in the afternoon of the third day, the 18th; the record offered and read as evidence in this case, is a copy of all of the record there is pertaining to that sale, and the land embraced in the Throop mortgage, in the office of the commissioners.

The defendant also offered a newspaper headed " Supplement to the Weekly Argus and Democrat," which contained only notices of sale of school and university lands, and forfeited mortgaged lands, advertised to be sold by the commissioners on the 16th of November, 1857, at the office of the Secretary of State, in Madison, and containing lands in nearly every county in the state.

The circuit court, after hearing the testimony, made the following decision and judgment :

" That, at the commencement of this action, certain persons who were part of them lessees and part of them assignees of the lessees of the plaintiff were in possession of the whole of lot 3, block 11, mentioned in the complaint, and the defendant claims title thereto. That B. Throop was formerly the owner of said lot, in fee, and mortgaged it to the State of Wisconsin, to secure a loan from the school fund; that the mortgage, from Throop to the state, was fully due on January 1, 1857, and no payment was received thereon, and no extension of time for payment given beyond that day, nor any sum paid, or offered to be paid by any one up to the day of trial.

" That on the 30th day of June, 1857, the commissioners of school and university lands of the State of Wisconsin, as by law required, appointed and directed said premises, with many other lands forfeited upon similar mortgages to the state, to be sold at the office of Secretary of State at the Capitol at Madison, on the 16th day of November, 1857, and duly advertised the same for sale at that time and place, in a newspaper printed in the county where said lot is situated for more than sixty days, in the manner following, that is to say, in the Milwaukee News. That such publication continued daily from June 30, 1857, to November 16. That at the

Krebs vs. Dodge.

time and place so appointed for such sale, two of the commissioners attended to make sale of the premises so advertised, and proceeded to sell the same, and publicly and fairly offered said lot 3 for sale at the amount of the charges of the state against it, under said mortgage; the offer being made to sell so much of the mortgaged premises, to the highest bidder for cash, as would pay the amount due for principal, interest, damages and costs of advertising and selling the same. That no bidder could be found who would give the full amount for said lot, and thereupon said commissioners bid on the same for the fund to which said mortgage belonged; that as soon thereafter as an opportunity offered, to wit—three or four hours after they so bid it in, and on the same day, in presence of a multitude of people, said commissioners offered said lot again for sale to the highest bidder, for cash, or on credit of five years, interest payable annually in advance, and there being no cash bids for the same, they sold the same to the defendant for $563 34, that being the whole amount chargeable on said lot, and the highest sum bid, and the defendant the highest and best bidder. That thereupon said commissioners made and signed a statement of such last named sale, as required by § 91 of chapter 24 of Revised Statutes, and recorded it in their office, of which statement the following is a literal copy:

"SALE OF FORFEITED MORTGAGED LANDS.

| Date. | To whom sold. | Description. | Amount due State. | Am't interest due. | Amount of penalty due. | Total am't interest and penalty due. | Cost of advertising. |
|---|---|---|---|---|---|---|---|
| 1857. Nov. 18. | State. | Lot No. 3 in block No. 11, in Walker's Pt., 5th Ward of the city of Milwaukee. | $500,00 | $35,00 | $25,00 | $60,00 | $3,34 |

Krebs vs. Dodge.

"RE-SALE OF LAND.

| Date of re-sale. | To whom sold. | Description. | Amount sold for. | Am't interest paid. | |
|---|---|---|---|---|---|
| 1857.<br>Nov. 18. | J. H. Dodge. | Lot No. 3, in block No. 11, in Walker's Pt., 5th Ward of the city of Milwaukee. | $563,34 | $3,90 | Patent issued Dec. 5, 1857, to J.H.Dodge. |

" That thereupon said Dodge executed and delivered a note and mortgage for the proper amount, $563 34; and received a deed or patent of said lot in fee as required, and which have both been recorded in the register's office of Milwaukee county, and that all the steps prior to and connected with said sale, from the direction as to the place and manner of sales to the giving of such patents, were duly taken as the law requires to render the proceedings perfect.

" That such sale was fairly conducted, and without fraud on the part of either of said commissioners or of said Dodge.

" And upon the facts the court decides that the defendant, at the date of the commencement of this suit, had perfect title to said lot in fee simple, and with the right of immediate possession of the same, and that judgment ought to be rendered in favor of said defendant, dismissing the complaint and affirming the title of said Dodge to said premises in fee, and his right of immediate possession thereof, and for his costs to be taxed. Dated June 8, 1858."

Judgment was rendered upon this finding, and the plaintiff took this appeal.

*Downner, La Due & Jenkins,* for the appellant.

*Waldo & Ody,* for the respondent.

*By the Court,* DIXON, C. J.   The first and most important question which arises in this case is whether, under the provisions of §§ 87 and 88 of chapter 24 of the statutes of 1849, there was in the first instance a sale of the lot in question to

the State, and subsequently a re-sale to the defendant, or whether the sale was made to the defendant directly on satisfaction of the mortgage. The latter proposition is very ingeniously and strenuously urged by the counsel for the defendant. The 86th section provides that " on failure to pay any interest or principal when due, on any such mortgage, the commissioners shall advertise the mortgaged property for sale;" the 87th section, that " at the time appointed for such sale, one or more of said commissioners shall attend, and they shall make sale of so much of the mortgaged premises to the highest bidder, for cash, as will pay the amount due for principal, interest, damages and costs of advertising and selling the same;" and the 88th section, that " in case no one will bid the full amount due as aforesaid, the commissioners present shall bid on the same on account of the proper fund; and as soon thereafter as may be, shall sell the same to the highest bidder for cash, or on a credit of five years, interest being payable annually in advance."

It is contended that the authority or requirement of the commissioners in the 88th section to bid on the same in case no one will bid the full amount due, is not intended as a sale to the State; but simply as a bid to prevent the mortgaged premises from being struck off under the 87th section at a sacrifice, and for less than the sum due to the State, to the injury and detriment of the fund; and for the further purpose of enabling them to sell the same on a credit, in case no further cash bids for the full amount shall be made.

Again, it is claimed that this view is strengthened by the provisions of § 89, which declares that " the sale authorized in the preceding section, shall not be for a less amount than the sum chargeable on said land, and if for more, the overplus shall be paid to the mortgagor, his heirs or assigns." It is said that the provision in this section for the payment of the " overplus to the mortgagor, his heirs or assigns," shows

Krebs vs. Dodge.

that his equity of redemption is not yet lost, and that a sale under section 88 is virtually a sale under the mortgage, and not a sale made by the State independently of the mortgage, after it had acquired title; and, *therefore*, it is claimed that no statement of a sale to the State made out and signed by the commissioners was necessary to be given in evidence to sustain the title of the defendant. In these views we feel compelled as we think for very obvious reasons to differ with the counsel.

In the first place § 87 is mandatory. It commands the commissioners to make sale at the time appointed for the sale. The sale provided for in the 88th section need not necessarily be at the time appointed for the sale under the 87th section. It may well be doubted whether under a fair construction of § 87, and without the limitation upon the authority of the commissioners contained in § 88, they would be authorized to sell the mortgaged premises for cash, for a less sum than the total amount of the principal, interest, damages and costs.

Section 87 being mandatory, and requiring the commissioners to make sale at the time appointed; section 88 provides that in case no one will bid the full amount due, or what would amount to the same thing, in case there should be no bidders, that then the commissioners " shall bid on the same on account of the proper fund," and thus the requirements of § 87 are in all cases complied with, and a sale is made. The word " bid," as here used, when construed with reference to the requirements of § 87, seems to imply that there is to be a sale. If the object was to enable the commissioners to sell upon credit, it is difficult to see why that could not have been provided for in the first instance, and as well without as with this idle ceremony of bidding. We think the object of requiring the commissioners to bid was to enable them in all cases to make sale, and thus cut off the mortgagor's equity of redemption. The commissioners, in pur-

chasing the mortgaged premises for the state, were not required to bid the full sum due, but might in their discretion bid such sum as they, in view of their situation and value, deemed most for the interest of the state, and thus hold the mortgagor personally liable for the deficiency, in case the state should fail to realize the whole amount due from a re-sale of the premises.

If, in reality, as is contended, there is but one sale provided for, that sale would be governed by the provisions of § 89, and then it would follow that the mortgaged premises, regardless of their value, could in no case be sold for a less sum than the total amount of the principal, interest, damages, and costs, and thus, though the state should fail to realize even a tithe of its debt, the mortgagor would be discharged from all liability to pay any portion of it. This, obviously could never have been the intention of the legislature.

The argument to be drawn from the provision in the 89th section, for the payment of the overplus to the mortgagor, in case of a sale under § 88, produces exactly the opposite conviction in our minds. If such sale were the first sale under the mortgage, and made directly to satisfy it, the overplus would clearly belong to the mortgagor without any such proviso in his favor; why, then, was it inserted in that section? Evidently for the reason that by the sale which had already taken place under § 87, his equity of redemption had been cut off, and without it he would not be entitled to such overplus. The state was pursuing a remedy for the collection of a debt justly due, and when that object was attained was satisfied. No speculation arising either out of the misfortunes or negligence of the mortgagor was sought, and hence the generous provisions, that on such re-sale the surplus, if any, should belong to him, though his equity of redemption, and consequent legal right to such surplus, was, in fact, gone.

Again, since it is clearly contemplated by the statute, that

Krebs vs. Dodge.

the state may become the purchaser, it may be inquired when and how it is to do so, if not under § 87 ? The commissioners are nowhere authorized to bid, except where the lands are offered under that section, and if the sale does not take place at the time and place of bidding, when and where does it take place ? But we have pursued this branch of the inquiry far enough, we think, to satisfactorily establish that a sale to the state is contemplated by §§ 87 and 88, as well as a mere bidding by the commissioners.

In passing upon this question we are reminded of the rule which requires us to look to contemporaneous construction, and to the interpretation of those officers whose immediate duty it is made by law to act under and give construction to a statute. In doing so, we think our views not only fully sustained by the action of the commissioners in this case, but by those of the counsel for the defendant, at the time of drawing the answer in this suit.

It appears in the bill of exceptions from a certified copy of a memorandum of sale, filed or recorded in the office of the commissioners, marked " sale of forfeited mortgaged lands," that the lot in question was sold on the 18th day of November, 1857, to the State, and the amount bid for principal, interest, damages, and costs, are particularly stated. It, in like manner, appears from a similar memorandum, marked " resale of land," that the premises were again sold on the same day to the defendant, and the like particulars of the sale appear. It is alleged in the defendant's answer, that the lot in question was offered for sale at auction, that no one would bid the amount due, and that, therefore, the commissioners present bid on the same and the same, " was then and there duly struck off to the state ;" and that the same was again offered for sale, and the defendant became the purchaser. The answer further states, that at the time the lot was so bid in by the commissioners for the state, a statement of such

Krebs vs. Dodge.

sale was made out and signed by them, and recorded in their office.  Thus it not only appears that such has been the construction given by the commissioners, but that the defendant, by his answer, has rested his defense upon showing that such sale to the state was, in fact, made.

The 91st section provides that "a statement of such sale shall be made out and signed by said commissioners, and shall be recorded in their office, and such record, or a copy thereof, authenticated by the certificate of the commissioners, shall be received as evidence of the matters therein contained;" and the 92d section, that "when any land is bid off by the state at such sale, no deed need be made therefor to the state; but the statement of such sale, and the record thereof, made as in the preceding section required, shall vest the title in the state for the use of the school fund."  Was any such statement introduced or offered in evidence on the trial of this cause?  That which most nearly approaches it, is the memorandum which we have above referred to.  If that be not the statement, there was none.  A fatal objection to that is, that it was not signed by the commissioners or either of them.  It does not purport to have been the official act of any person or officer; but, on the contrary, appears to be a mere auctioneer's memorandum, made for the use and convenience of the clerks and others engaged in, and who were familiar with the mode of transacting the business of the school land office.

Without attempting to decide what facts should appear in such statement, we would remark that if even this was signed by the commissioners, it does not appear to be such a solemn and official statement of facts as wisdom and sound policy would dictate in an instrument which, for all time, is to be the sole and exclusive evidence of title to real estate.

Upon the question of actual possession being required in order to enable the plaintiff to maintain this action, we are

of opinion that the possession declared by the pleadings and evidence, viz: that of tenants holding under the plaintiff, is sufficient for the purpose. It follows from the view we have taken of this case, that the plaintiff is entitled to the relief demanded in his complaint, and that the judgment of the circuit court must be reversed.

The judgment of the court below, is, therefore, reversed, with costs, and the cause remanded for further proceedings therein, in accordance with this opinion.