STATE ex rel. CRAMPTON vs. THE COMMISSIONERS OF SCHOOL AND UNIVERSITY LANDS.

It is not necessary to the validity of a sale of school and university lands by the commissioners thereof, that they should make, sign and cause to be recorded a statement of the sale.

*Forfeited* school and university lands may be sold in such order as the commissioners may determine. Sec. 9, chap. 24, R. S., 1849 (sec. 25, chap. 28, R. S., 1858), regulating the order in which school and university lands should be sold, applied only to the first sales in each county.

The commissioners, before the time fixed for a sale of the forfeited school lands in a county, promised A, who held certificates for certain tracts which he wished to redeem, that they would reserve those tracts from sale until the last day of the sales, to give him an opportunity to redeem them, and caused to be entered in the proper books of their office a memorandum of such reservation, but by inadvertence of their clerks, the tracts were put on the sales book without the memorandum, and for that reason were sold to B, when reached in their order; but A, before the last day of the sales, paid to the commissioners the amount required to redeem all but one of said tracts, and the sales to B were declared by the commissioners to be rescinded. B deposited with the state treasurer the amount of money required by law to be paid to entitle him to certificates of sale of such tracts, but the commissioners refused to give him such certificates. *Held*, that the commissioners had power to reserve the tracts for which A had certificates until the last day of the sales, and they having agreed with him to do so, the rescission of the sale to B was proper.

APPLICATION for a writ of *Mandamus*.

On the 4th of March, 1859, this court, on the application of the relator, granted an alternative writ of *mandamus* directed to the commissioners of school and university lands, commanding them to execute to the relator certificates of

June Term,  sale for several tracts of land described in the writ, or show
  1861.    cause, &c.   From the papers now on file in the cause it ap-
STATE      pears that on the 22d of the same month the commissioners
  v.       filed their return to the writ.   The facts alleged in the relation
COM'RS OF S.
& U. LANDS. and return will appear from the opinion of the court.   The
relator filed an answer to the return on the 13th of April,
1859; and on the 20th of June, 1861, the respondents moved
to quash the alternative writ on the ground that it appeared
upon the face of the writ and the pleadings that the relator
was not entitled to any relief in this cause.

*Small & Cogswell*, for relator:

1.  This is a strictly *legal* proceeding, to which Reed is not
a party, and his equitable rights as to the land in controver-
sy cannot be passed upon in this proceeding.   2.  The com-
missioners, being mere ministerial officers, had no power to
rescind the sale to the relator after it was once made in
pursuance of the statute.   This could be done only in a
court of equity, and in a proceeding instituted for that pur-
pose.   3.  The statute (sec. 25, chap. 28, R. S.) is perempto-
ry as to the order of sale, and the commissioners had no
power to withhold from sale the tracts of land in question
until the last day.   4.  The respondents cannot be protected
in their refusal to issue certificates to the relator, under sec.
121, chap. 28, R. S., because their agreement with Reed was
illegal and void, and because this is not such a case of mis-
take as is contemplated by that section.

*James H. Howe*, Attorney General, *contra.*

December 11.   *By the Court*, COLE, J.   This cause is argued by counsel,
in their written arguments, on the hypothesis that a motion
to quash the alternative writ has been filed and is now
pending in this case.   We can find no such motion on file,
and the records of the clerk do not show that any such mo-
tion was ever made.   However, if any such motion was
made, in view of the matters set forth in the relation and al-
ternative writ, it would have to be denied.   For assuming
all the matters set forth in the writ and relation to be true,
as a motion to quash necessarily concedes, they show a good
and valid sale of the lands therein mentioned to the relator.

This being so, he would, as a matter of course, be entitled to the certificates of sale from the commissioners, as muniments of title. The counsel for the respondents seem to think that the relation does not show a valid sale, because it does not show that the commissioners made out a statement of the sale, and signed the same and caused it to be recorded, and it is insisted that this was essential within the decision in *Krebs vs. Dodge*, 9 Wis., 1. But this is a misapprehension of the decision in that case. There mortgaged premises had been sold and bid in by the commissioners *in behalf of the state*, and it was held that the commissioners should make out a proper statement of the sale, sign and record the same, in conformity to the statute, for the reason that the law required such statement, and it was the only record evidence of the title of the lands in the state. But when a sale of school lands is made to an individual, then the statute authorizes and directs the commissioners to give certificates of sale. So it is very clear that the case of *Krebs vs. Dodge* has no bearing upon the point whether the relation and writ showed a valid sale in this case. We have already stated that if the case stood upon the relation and writ alone, we should be compelled to award a peremptory writ commanding the commissioners to issue certificates of sale. But it appears the commissioners have made a return to the writ, in which they state certain matters in avoidance of the facts set forth in the relation, and upon which they rely as a good and sufficient excuse for not issuing the certificates to the relator. And I may add here, that this return is not to be found among the papers, and we ascertain its contents chiefly from the plea of the relator and the brief of his counsel, which purports to contain the material portion of the return. But still we find a plea to the return, and the cause is submitted in this attitude for our decision upon the questions raised by the pleadings, which we now proceed to give.

The relator's case is, in substance, that several tracts of school land, described in the relation, which had been sold to one George Reed, had become forfeited for non-payment of interest due thereon for the year 1858; that they were duly advertised for sale by the commissioners as forfeited

lands, and sold at public auction, and struck off to him as the highest bidder; that he deposited with the state treasurer the several amounts of money to be paid thereon according to the conditions of the sale, and demanded the usual receipts and certificates of sale.

In their return the commissioners state that a few days before the time fixed for the sale, Reed, the owner of the certificates of purchase, informed them that he was desirous of redeeming, and intended to redeem the land before sale, and requested them to reserve and withhold the same from sale until the last day of sales of the forfeited lands, in order to give him an opportunity to redeem them; and that they granted his request, and did then and there promise and agree with Reed to reserve and withhold the lands from sale until the last day of the sales, to enable him to redeem them from forfeiture. The commissioners allege that they caused to be entered in the proper books in the office of the commissioners, the fact of such reservation, but that, through the negligence or inadvertence of some of the clerks in the office, the tracts were put upon the sales book without any memorandum of such reservation; and by reason thereof, the tracts were sold to the relator when reached in their order; but that as soon as the fact of the sale was ascertained, and before the last day of the sales, the sale to the relator was rescinded and set aside, and the several tracts reinstated upon the sales book, pursuant to the agreement of reservation; and that before the last day of sales, Reed redeemed the land as required by law, except one tract; and for this reason they refuse to issue certificates of purchase of the several tracts to the relator.

It is now claimed and insisted that, admitting the return of the commissioners to be true, it shows no valid excuse for not issuing certificates of purchase to the relator, because, it is said, the commissioners had no power to reserve the lands to the last day of sales, but must sell them in their order according to the statute. If this be a correct view of the law regulating the sales of forfeited school lands, the relator must prevail. Sec. 9, chap. 24, R. S., 1849, is relied on to sustain this position. That section provides that the order of sale at auc-

tion of the school and university lands, shall be to begin at the lowest number of the sections, townships and ranges in each county, and proceed regularly to the highest until all then to be sold are offered for sale. We are of the opinion that this section was not intended to refer to and regulate the sale of forfeited lands, but related to the first sale of the school lands which took place in the county. The legislature were speaking, in the previous sections, of the first sale, and prescribing the manner of conducting it, and where large quantities of land were to be sold, as was the case in some counties, the convenience of bidders and of the commissioners would be best promoted by some uniform rule or order of sale. This the legislature intended to provide for in prescribing the order of sale in this section. But the reason for adhering to a fixed order of sale would lose its force when applied to the sale of separate or scattered pieces of forfeited lands. It was probably not expected that many lands would be forfeited, and therefore the prescribing of the order in which such lands should be sold was deemed an immaterial matter. And this view is strengthened by the fact that the legislature afterwards changed the law in regard to the sale of the forfeited lands, by authorizing their sale either in the county where they were situated or at Madison (chapter 43, Laws of 1853; chapter 22, Laws of 1855), and adopted a different mode of selling the forfeited lands, in some respects, from what had theretofore obtained. By the subsequent legislation, no order of sale of the forfeited lands is prescribed, this matter being left to the discretion of the commissioners. So whatever reason there might be for saying that under the Revised Statutes of 1849, the commissioners were required to sell the forfeited lands in the order prescribed for selling the lands in the first instance, there can be no ground for holding, after the above enactments, that the order of sale was inflexible when the tracts mentioned in the relation were to be sold, and that the commissioners had no power to change this order for any cause. The commissioners had the right to postpone the sale of the Reed lands until the last day of sale, if they thought proper to do so. This, it seems, they

informed him they would do, and he relied upon this understanding, and did not redeem before the lands had been sold to the relator by a mistake. When the mistake was discovered, the sale was set aside, and Reed was permitted to redeem within the time agreed upon. In this case we see no violation of duty on the part of the commissioners, nor any unauthorized exercise of power on their part. It seems to be strictly analogous to a sale in chancery, where, from some mistake or surprise, a party interested in the premises has been prejudiced, and where courts grant relief by setting the sale aside. Such is our view of that transaction, and that the commissioners acted properly in the premises.

In the absence of the answer, and being somewhat in the dark as to the issues raised by it and the plea of the relator, we can make no final order further than to deny the motion to quash the alternative writ, and leave the parties to pursue their rights as they may think proper after this expression of our opinion upon some of the questions involved in the case.