Baldwin vs. Ely and others.

BALDWIN, Appellant, vs. ELY and others, Respondents.

*March 24 — May 15, 1886.*

*Tax titles: Redemption: Constitutional law: Vesting title in county without deed: " Due process of law."*

Sec. 1, ch. 132, Laws of 1866, declared that "whenever any lot or tract of land shall be or shall have been, for five successive years, sold for taxes, and bid in for the county, and *remain unredeemed,* the title thereof shall absolutely vest in the county where such lot or tract of land is situate; and, when so vested, shall not be liable to assessment for taxes of any kind or description." Sec. 3 provided that "the provisions of this act shall not apply to any tax certificate now issued until two years from and after the passage and publication of this act." *Held:*

1. The words "remain unredeemed" referred to the completion of the five successive sales mentioned in sec. 1, or the termination of the two years mentioned in sec. 3, and not to the expiration of the usual three years allowed for redemption under sec. 18, ch. 22, Laws of 1859 (sec. 1165, R. S.). Whenever, therefore, there was a concurrence of the three conditions mentioned, i. e. when (1) the land had been sold five successive years (2) to the county, and (3) had not been redeemed, the title vested at once and absolutely in the county, provided two years had elapsed since the passage and publication of the act.

2. The act was not repealed or superseded prior to the enactment of ch. 166, Laws of 1869.

3. The act was not unconstitutional as being special or class legislation, nor as depriving the owner of his property "without due process of law."

4. It was competent for the legislature to shorten to two years the time for redemption from tax sales already made.

5. It was also competent for the legislature to dispense with the execution of a tax deed in cases coming within the act, and to vest the title in the county by the mere operation of law.

ORTON, J., dissents.

APPEAL from the Circuit Court for *Marathon* County. The case is thus stated by Mr. Justice CASSODAY:

"This is an action of ejectment for 400 acres of land, particularly described in the findings of the court. The complaint is in the form prescribed by sec. 3077, R. S., and alleged that the plaintiff was the owner in fee simple, and entitled to the immediate possession.

"The defendants answered that the lands described in plaintiff's complaint were, by the several authorized officers of the several towns of Marathon county in which said lands lie, returned as delinquent for the nonpayment of taxes levied and assessed against them for the years 1862, 1863, 1864, 1865, and 1866, and in each of said years were, after due notice, sold by the county treasurer of Marathon county for the nonpayment of said taxes; and were, in each and every of said years, bid in at such sales by the said county of Marathon; and, further, defendants allege that this action was not commenced within the time limited by law by sec. 1210e, R. S. 1878, nor by the time limited by law by subd. 4, sec. 4221, R. S. 1878; and defendants, further answering, admit that they are in the constructive possession of the lands mentioned and described in plaintiff's complaint, and have been in such constructive possession for more than ten years last past, and have, during that time, paid large amounts as taxes assessed thereon, to wit: in 1873, $33.29; 1874, $33.95; 1875, $41.28; 1876, $37.79; 1877, $36.91; 1878, $24.17; 1879, $29.54; 1880, $50.94; 1881, $59.98,— in all, the sum of $347.85; and, further, defendants allege that said plaintiff has not deposited said sums, with interest from

dates of payment, with the county treasurer of Marathon county, as required by ch. 278, Laws of 1883; and, further, defendants deny each and every allegation in said complaint contained, except as hereinbefore admitted, explained, or modified. Wherefore defendants demand that this action be dismissed, and they have their costs and disbursements herein. To that answer the plaintiff put in a reply.

"The jury was waived and the cause was tried by the court, which thereupon made and filed the following findings of fact and conclusions of law, to wit:

"'1. That the plaintiff showed title in himself, by conveyances from the patentee of the United States government, to the N. E. ¼ of the N. W. ¼, W. ½ of the N. W. ¼, and S. E. ¼ of section 35, township 27, range 3, and E. ½ of the S. E. ¼, and the S. W. ¼ of the S. E. ¼, of section 2, township 26, range 3.

"'2. That the defendants were duly served by summons in the above-entitled cause, and appeared in said action by their attorneys, Eldred & Brown; that the defendants admitted their possession of said land, and claimed title to the same.

"'3. That their claim of title was based upon tax deeds issued by the clerk of the board of supervisors of Marathon county to Marathon county, on tax sales of 1862 and 1863, all of which tax deeds were void on their face; and by a deed from Marathon county to the state of Wisconsin, in June, 1867; and by patents from the state of Wisconsin to grantors of defendants; and by mesne conveyances from said grantors to defendants; that all the title that defendants have, had, or claimed to have, to the S. E. ¼ of section 35, township 27, range 3 E., was the title above mentioned.

"'4. That in the years 1861, 1862, 1863, 1864, and 1865 taxes were duly levied and assessed on the N. E. ¼ of N. W. ¼, and W. ½ of N. W. ¼, of section 35, township 27, range 3 E., and the E. ½ of S. E. ¼, and S. W. ¼ of S. E. ¼;

of section 2, township 26, range 3 E., and in the years 1862, 1863, 1864, 1865, and 1866, sold to and bid in by Marathon county, and certificates of sale to said county were duly issued; and all of said tax certificates were, in June, 1868, duly delivered over to the state of Wisconsin, under and pursuant to ch. 22, Laws of 1867; but no assignment of said tax certificates was made, as required by law for the assignment of tax certificates, except as provided by said law of 1867, and such certificates remain unredeemed.

" '5. That the plaintiff offered to prove that under and pursuant to ch. 22, Laws of 1867, the county of Marathon deeded about 40,000 acres of land upon which the county held tax deeds, void on their face, to the state of Wisconsin, and charged the state up with about $20,000 of state tax, as a consideration for said deed and transfer of certificates; but said evidence was rejected as incompetent and immaterial, to which ruling plaintiff duly excepted.

" '6. That the defendants set up the bar of the statute of limitations provided by chapter 132, General Laws of Wisconsin of the year 1886, and in section 1210e, R. S. 1878, and section 4221, R. S. 1878.

" '7. That a reference was ordered to Alexander Craven, court commissioner, to ascertain the amount of taxes, and interest on the same, paid by the defendants on the said S. E. ¼ of section 35, township 27 N., of range 3 E., and said referee reported the amount to be the sum of $234.23, which amount should be paid by the plaintiff to the defendants as a condition of judgment for the S. E. ¼ of section 35, township 27, range 3.'

"And as conclusions of law the court finds:

" '1. That the defendants were in the wrongful and unlawful possession of, and unlawfully and wrongfully withheld the possession of, the S. E. ¼ of section 35, township 27 N., of range 3 E., from the plaintiff; and that the plaintiff is entitled to judgment against the defendant for the

possession of the same upon paying to the defendant the sum of $234 for taxes.

" '2. That the plaintiff's complaint be dismissed as to the balance of said land described in the complaint.'

" To the second conclusion of law the plaintiff, in effect, excepted, on the ground that it was not supported by the findings of fact, and should have been that the plaintiff was entitled to judgment for all the land described in the complaint.

" Upon said findings of fact and conclusions of law, judgment was entered in favor of the plaintiff, and against the defendants, as to the 160 acres of land described in the third finding of fact and first conclusion of law; and in favor of the defendants, and against the plaintiff, as to the 240 acres of land described in the fourth finding of fact, and referred to in the second conclusion of law. From that part of the judgment in favor of the defendants, and against the plaintiff, and from the whole and every part of that part thereof, the plaintiff appeals."

For the appellant there were briefs by *Grace & Alban*, attorneys, and *Pullings, Hoyt & Holway*, of counsel, and oral argument by *Mr. D. J. Pulling*. They contended, *inter alia*, that, assuming that the act of 1866 was a valid act, its plain meaning is that when lands are bid in by the county for five successive years and the owner has allowed the three years for redemption to pass after the last sale, then the title shall vest in the county, or, in case sale had been made prior to the date of the law and the three years for redemption had expired, then the owner was to have two years from the date of the enactment of the law to redeem. The right of redemption is favored, and such laws should receive a liberal construction. Cooley on Taxation, 363; *Dubois v. Hepburn*, 10 Pet. 1; *Jones v. Collins*, 16 Wis. 605. The act of 1866 does not expressly repeal the right of redemption; and a repeal by implication is not

favored. *Att'y Gen. ex rel. Taylor v. Brown*, 1 Wis. 513; *Goodrich v. Milwaukee*, 24 id. 422; *State v. Campbell*, 44 id. 538. As the act was construed by the circuit court, as soon as the land was sold in the fifth year and bid in by the county, the title immediately vested in the county without redemption. So construed the act deprives the owner of his property without due process of law, and is in conflict with sec. 1, art. XIV of the amendments to the federal constitution. The terms " due process of law," and "law of the land," as constitutional terms, are of equivalent import, and 'are taken from *Magna Charta. Parsons v. Russell*, 11 Mich. 129; *State v. Staten*, 6 Coldw. 234, 244; Cooley's Con. Lim. (4th ed.), 437, 440; *Davidson v. New Orleans*, 96 U. S. 97. The legislature cannot take the property of A. and give it to B.; neither can it make a void title valid. *Orton v. Noonan*, 23 Wis. 103; *Brown v. Hummel*, 6 Pa. St. 86; *S. C.* 47 Am. Dec. 431 and note; *Wilkinson v. Leland*, 2 Pet. 659; *Osborne v. Jaines*, 17 Wis. 574; *Nelson v. Rountree*, 23 id. 367; *Smith v. Packard*, 12 id. 371; Cooley's Con. Lim. 94; *Dash v. Van Kleeck*, 7 Johns. 477; *Ogden v. Blackledge*, 2 Cranch, 272; *Hoke v. Henderson*, 3 Devereux's Law, 12; *Salters v. Tobias*, 3 Paige, 338; *Merrill v. Sherburne*, 1 N. H. 199; *Dupy v. Wickwire*, 1 D. Chapman, 237; *Union Iron Co. v. Pierce*, 4 Biss. 327; *Lincoln B. & S. Asso. v. Graham*, 7 Neb. 173; *How v. Kane*, 2 Pin. 531. From the date of the law to time of sale in 1866, it would be about twenty days. Considered as a limitation the time for the party to pay his tax would be too short. Cooley's Con. Lim. (5th ed.), 450; Wood on Lim. of Act. 29 and note; *Terry v. Anderson*, 95 U. S. 632; *Hart v. Bostwick*, 14 Fla. 162; *Pearce's Heirs v. Patton*, 45 Am. Dec. 61; 7 B. Mon. 162. In tax proceedings, notice and an opportunity for a hearing are matters of constitutional right. Cooley on Taxation, 266, and cases cited.

For the respondents there were briefs by *C. F. Eldred*, attorney, and *Silverthorn, Hurley & Ryan*, of counsel, and the cause was argued orally by *Mr. Eldred, Mr. Hurley*, and *Mr. Ryan.* To the point that the legislature, in the exercise of its power of taxation, may enact laws whereby lands may become forfeited without a tax sale and without inquest of office, and that *a fortiori* it may enact a law like the one in question, which merely provides a method of vesting in the county the legal title to lands which have been sold to it for five successive years, and upon which, before the law could apply to them, the county would be entitled absolutely to three tax deeds, they cited 2 Desty on Taxation, 782; *Wild's Lessee v. Serpell*, 10 Grat. 405; *Staats v. Board*, id. 400; *Hale v. Branscum*, id. 418; *Flannagan v. Grimmet*, id. 421; *Usher's Heirs v. Pride*, 15 id. 190; *Hodgdon v. Wight*, 36 Me. 326; *Adams v. Larrabee*, 46 id. 516, 519; Cooley on Taxation, 317.

CASSODAY, J. This is an action of ejectment. The bringing of it was a confession that the plaintiff was not in possession. It was, moreover, a confession that the defendants were in the actual or constructive possession. Without such possession in the defendants, or some of them, the action could not be maintained. In such an action, the plaintiff must recover, if at all, upon the strength of his own title, and not on the weakness of the defendant's title. It is an action to try the title and right to the possession of land. More accurately, it is an action to determine the plaintiff's title, and his right to the possession. The possession of the land being confessedly in the defendants, their title is not in issue, and not before us for consideration. The plaintiff claims to be the owner in fee under the original title. To recover, it was necessary for him to establish such claim and right to the possession. The plaintiff traced his title from the United States. The only question is

whether his title had been forfeited or divested for non-payment of taxes. There is no bill of exceptions. The questions involved arise upon the sufficiency of the findings to support that portion of the judgment in favor of the defendants. That relates to the 240 acres of land specifically described in the fourth finding of fact, and as to which the complaint was dismissed. It is found that, as to each of those several pieces of land, taxes were duly levied and assessed thereon in each of the years 1861, 1862, 1863, 1864, and 1865. It is also found that each of said several pieces of land were sold to, and bid in by, Marathon county, and certificates of sale duly issued thereon to said county in each of the years 1862, 1863, 1864, 1865, and 1866, respectively. It is also found that in June, 1868, said tax certificates were duly delivered over to the state of Wisconsin under and pursuant to ch. 22, Laws of 1867, but that no assignment of said tax certificates was made, as required by law for the assignment of tax certificates, except as provided by that act. It is also found that said tax certificates have since remained unredeemed.

Ch. 132, Laws of 1866, was published April 25, 1866. The first section of that act declared that "*whenever* any lot or tract of land shall be or shall have been, for *five successive years, sold* for taxes, and *bid in for the county*, and *remain unredeemed, the title* thereof *shall absolutely vest* in the county where such lot or tract of land is situate; and, *when so vested*, shall *not be liable* to assessment for taxes of any kind or description." The second section provided that "the county board of supervisors shall have full authority to sell and convey any and all such lands, the title to which has become vested in the county, on such terms as they shall deem proper, and the proceeds therefrom shall be paid into the general or contingent fund of the county." The third section declared that "nothing herein contained shall be so construed as to apply to lands owned by minors,

or persons who are *non compos mentis*, insane, or under guardianship: provided, that the provisions of this act shall not apply to any tax certificate now issued *until two years* from and after the passage and *publication* of this act." Section 4 provided that "this act shall take effect, and be in force, from and after its passage and publication."

Much discussion has been given to the meaning of this act. It is of first importance to know just what its terms imply, assuming it to be valid. The act was not only prospective, but retrospective. Hence the words in the first section, "whenever any lot or tract of land *shall be* or *shall have been*, for five successive years, sold for taxes," etc. The several sales mentioned were made on the second Tuesday of May in each of said years. Ch. 34, Laws of 1861. It follows that the last of said sales was made only a few days after ch. 132, Laws of 1866, went into effect. Four of the sales had been made before that act went into effect; that is to say, they were made on the second Tuesday of May in 1862, 1863, 1864, and 1865, respectively. Upon each of those four sales tax certificates had already been duly issued to the county. The proviso in the third section quoted prevented the provisions of that act from applying to any such tax certificates which had thus been previously issued, "until two years from and after the passage and publication of" that act, which would be April 25, 1868. But it was not and could not be definitely known, at the time that act went into effect, that it would ever apply to all or any of said tax certificates which had thus already been issued. For aught that was then known, some of them, or even all of them, might be redeemed before April 25, 1868. Had all been redeemed before that date, then that act never could have applied to any of those outstanding certificates. The same is true had the sale of 1865 alone been redeemed before April 25, 1868; for the title to no piece of land could vest in the county under that act

until it had been sold for taxes "*for five successive* years," and on each such sale bid in for the county, and then remain unredeemed until the act did become operative upon all of such five successive sales and the five successive tax certificates issued thereon. Had the land in question also been sold for taxes in the year 1861, and bid in for the county, and remained unredeemed, then it would have been sold for taxes "for five successive years" prior to the passage of the act; and the case would have been wholly within the retrospective language of the first section, and the proviso of the third section. But, even then, the title to such land would not, under that section and that proviso, have become absolutely vested in the county until April 25, 1868; nor then, unless at that time each of such sales and tax certificates had remained unredeemed. In other words, the owner would have had two full years after the passage and publication of that act to redeem such lands from such sales and tax certificates, or one of them, so as to have broken the continuity of "five successive" sales, and thus prevented the title from becoming absolutely vested in the county.

Upon the facts disclosed in the record, the act was retrospective as to the four successive sales which preceded its publication, and prospective as to the one sale which occurred a few days after its publication. Still, the owner had two full years after such publication to redeem from the four prior sales and certificates; so the redemption of one of them would have broken the continuity of five successive sales, and that alone would have prevented the original title from becoming divested. But the owner had only a few days less than two years to redeem from the sale made, and the certificates issued immediately after the publication of the act. Either of such redemptions would have effectually prevented the title from becoming absolutely vested in the county, April 25, 1868, under the provisions of

the act; for one of the conditions therein required, in order that such title should so vest, was that the sales for taxes for each of such "five successive years" should then "remain unredeemed." As the number of the five successive sales occurring after the publication of the act increased, the length of time for redeeming from the last of such sales would diminish, but the time for redeeming from most of the others would be correspondingly lengthened; and since the redemption from one of such other sales would just as effectually have broken the continuity of such five successive sales as to redeem from the last, it would be equally potential in preventing the title from becoming absolutely vested in the county, and hence could work no hardship to such owner.

It is urgently contended, with much elaboration, that the words "remain unredeemed," in the first section, have no reference to the termination of the two years mentioned in the proviso in the third section, nor to the time of the completion of the five successive sales mentioned in the first section, but to the three years given to the owner or occupant of any land sold for taxes for the redemption thereof, by sec. 18, ch. 22, Laws of 1859. There are several serious objections to any such construction. That section not only gave to such owner or occupant three years within which to redeem such land, but in like manner gave him the right to "redeem any such lands, or any part thereof, or interest therein, at any time before the tax deed executed upon such sale" should be "recorded," and provided that when so redeemed such deed should be void. Sec. 1165, R. S.; *Hewitt v. Week*, 59 Wis. 447. If the words "remain unredeemed" had any reference to the right of redemption given by that section, then they necessarily covered and included the entire right to redeem thereby secured. If they covered and included such right, then ch. 132, Laws of 1866, was ineffectual for any purpose; for, by recording such tax deed, such right

of redemption would have become barred and forever lost, and the title thereby completely divested.

But such construction would be in direct conflict with the language of ch. 132, Laws of 1866. That act declared, in effect, that the title of any lot or tract of land should absolutely vest in the county "*whenever*" it should be sold for taxes "for five *successive* years, . . . and bid in for the county, and *remain unredeemed.*" It required (1) that the lot or tract of land should be sold for taxes for five successive years; (2) that it should be bid in for the county; (3) that it should remain unredeemed. These three conditions were the only requisites therein contained for absolutely vesting the title in the county. The word "whenever," as used, necessarily related solely to the time of the concurrence or co-existence of these three conditions. No other condition was included therein. We have no authority to include another by judicial legislation. The two-years proviso mentioned was not a condition in the sense we are now considering. It merely fixed the time when the provisions of the act should apply to such tax certificates as had been issued prior to its passage and publication. It has already been sufficiently considered. The word "whenever," in the first section of ch. 132, Laws of 1866, was clearly used as an adverb of time. To say that it did not refer to the time of the co-existence of the three conditions named in the act itself, but did refer to the time of recording the tax deed, or to the time for redeeming from tax sales as provided in another act, passed at a different time and for a different purpose, would not only be a strained and unnatural construction, but peculiarly absurd. If it referred to the time of recording the tax deed, then was the tax deed to be issued upon the first, second, third, fourth, or fifth tax sale? It could apply to no piece of land until there should be five successive sales for taxes in as many years, nor then unless

at each such sale it should be bid in for the county and remain unredeemed. If it applied to the time of recording the deed on the last of the five successive tax sales, then was it upon the assumption that a tax deed on each of the four prior sales had also been recorded? If it was, then we would have the absurdity of a legislature providing for the forfeiture or divesting of the original title after it had been effectually divested by each of four successive tax deeds, duly recorded, and as to some of which the statute of limitations would have run. The same absurdities suggest themselves if the word " whenever " should be construed to apply to the termination of the three years given for redemption by the act of 1859. Besides, as indicated, such construction would wholly defeat the very purpose of the act in which the word was thus used.

Again, each of said acts sought to attain an object entirely different from and independent of the object sought to be secured by the other. One was general, applying to every tax sale, regardless of who was the bidder, or whether there had been any other tax sale. The other could only apply where there should be five successive sales for taxes of the same piece of land, in five successive years, and then only when such land should be bid in for the county at each of such sales, and remain unredeemed at the time of the co-existence of the three conditions named. The words " remain unredeemed " constituted one of such conditions. As indicated, they were significant upon every conceivable state of facts to which the act was applicable. They were in no sense indefinite or uncertain. They were essential to fully express the intention of the legislature in preserving the substantial rights of the land-owner under the act. Without them the act would, in terms, have divested the title of such owner, even had he redeemed from one or more of such five successive sales. But such was not the purpose of the legisla-

ture. The title of the owner was only to be forfeited or divested when he allowed every one of the five successive sales to "remain unredeemed." Hence those words were used to express that purpose. Besides, if the right of the original owner to redeem the land continued for three years after the fifth sale should be completed, it could only be on the theory that he was still the owner, and that his title had not been divested. But if that were so, the land would then continue to be liable to taxation, whereas the last clause of the first section of the act provided that it should "not be liable to assessment for taxes of any kind or description" after the title should be so vested in the county by the co-existence of the three conditions named. Ch. 166, Laws of 1869, was upon the theory that prior to its enactment the lands of which title had vested in the county under ch. 132, Laws of 1866, were not liable to taxation; otherwise, there was no necessity for its passage. In construing ch. 132, Laws of 1866, we must consider the object thereby sought to be secured, and construe the words employed with reference to that object and the context. Certainly there is no rule of construction which would authorize us, in construing certain words contained in that chapter, to wholly ignore the context, and consider them solely with reference to similar words in another act, passed at a different time, and for a different object, when by so doing we would defeat the very purpose of the act in which the words are found. After very careful consideration, we must hold that, as to such tax sales and tax certificates as ch. 132, Laws of 1866, was applicable to, and according to the terms of that act, the title to any piece of land sold for taxes absolutely vested in the county whenever the three conditions therein named co existed; and that one of such conditions was that such land should "remain unredeemed" from each of the five successive sales therein mentioned at the time such co-existence should occur. By such construction the

title of the original owner or owners of the 240 acres of land in question became wholly divested April 25, 1868, unless prior to that time the act was repealed, or materially altered, or found to be unconstitutional.

There is no claim that ch. 132, Laws of 1866, was expressly repealed or superseded until the enactment of ch. 166, Laws of 1869; nor is there any good reason for holding that it was, prior to that date, repealed by implication. It is said in one of the briefs of counsel that during that time there were some amendments made to the tax laws worthy of consideration. Reference is there made to chapters 112, 113, Laws of 1867, and chapters 75, 157, Laws of 1868. Ch. 112, Laws of 1867, was "for the limitation of tax certificates." It barred the issuing of a deed or the commencement of an action on a tax certificate, after the expiration of six years from the day of sale; and provided that such provisions should "not apply to certificates owned by counties or municipal corporations, or by their assignees, until the expiration of six years from the date of assignment of any such certificate." That chapter was amended by ch. 56, Laws of 1868, adding a saving clause in case of injunction. Ch. 113, Laws of 1867, was "in relation to tax deeds," and provided for giving notice of application therefor in case of "actual occupancy or possession;" and that was amended by ch. 157, Laws of 1868, so as to require proof of non-occupancy or possession after March 13, 1868. Ch. 75, Laws of 1868, enlarged the authority given to the county board of supervisors by sec. 2, ch. 132, Laws of 1866, so as to enable them to assign such tax certificates and tax deeds issued thereon. None of the acts referred to prevented, nor was in any way inconsistent with, the title to the 240 acres of land in question being absolutely vested in the county, April 25, 1868, as indicated. The title of the original owner having, according to the terms of the act, become divested at that time, and the same having thus be-

come vested in the county at that time, such title of the county obviously could not in any way be weakened by taking tax deeds thereon to itself; certainly not, if such tax deeds were void upon their face, and hence ineffectual,— much less, if valid upon their face and otherwise effectual.

The question whether ch. 132, Laws of 1866, was unconstitutional and void, as urged by the learned counsel for the plaintiff, still remains to be considered. It is said to have been special or class legislation. In a sense, it is true. In a limited sense, statutes for the collection of taxes are frequently special in respect to individuals laboring under disabilities; as the insane, minors, married women, and the like. The validity of such laws has not, to our knowledge, been questioned in this court on that ground. This was an act entitled "An act to vest the title of unredeemed lands in counties." It applied only to cases where the three conditions named co-existed. In most counties no such case occurred, as people generally paid their taxes. If any failed, and their lands were sold for taxes, they were generally redeemed before there were five successive sales. Even where there were five successive sales, none of which were redeemed, still it seldom occurred that every one of such sales was bid off for the county. The right of the county to bid at all was statutory. In fact the county could not, under the general law, be a competitive bidder at the sale. The land could only be bid off for the county when it could not be sold for the amount of the tax. Sec. 9, ch. 22, Laws of 1859. The same statute is still in force. Sec. 1138, R. S. But the class to which the act applied was still more limited, for the third section quoted expressly prohibited its application "to lands owned by minors," or persons who were "non compos mentis, insane, or under guardianship." The very narrow limits of the class to which the act applied, and its very short duration, may answer the query propounded on the argument: Why has not

the question here involved arisen before? "It is not an uncommon provision that if no bidders offer to take the land and pay the tax, it shall be bid in for the state or for the county." Cooley on Taxation, 351, (2d ed.) 509, and cases there cited.

So it appears that the county was not a voluntary purchaser. It was forced to purchase in the cases named, and is still forced to purchase in like cases. The county of Marathon was the agency through which the state levied and collected its taxes in that county. It was certainly competent for the state to make counties such agents, and even to make them liable as principal debtors for the quota of the state tax assessed within their respective limits. "Provisions to this effect are common in the statutes." Cooley on Taxation (2d ed.), 468; 1 Desty on Taxation, § 97. Legislation respecting municipal agencies in the collection of taxes must necessarily be special. It is wholly unlike discrimination between individuals laboring under no disability, or even discrimination upon general questions. The act in question was a public law, and every person owning land in the state was conclusively presumed to know of its provisions. Knowing the law, it was entirely optional with him to pay or redeem; or take his chances as to the effect of the statute.

The authority of the legislature to shorten the time for redeeming from some of the certificates up to two years, cannot be seriously questioned, under the numerous decisions of this court on the subject. The right to apply such shortened limitation to certificates which had already been issued cannot be doubted, under the same decisions. Thus, the validity of the statutes limiting the time for bringing actions to cancel tax certificates and tax deeds previously issued to nine months has frequently been sanctioned. Secs. 1210d, 1210e, R. S. Under those decisions it was competent for the legislature to bar any action commenced after the

two years to invalidate any of said tax certificates or to raise any question as to their validity, except, perhaps, one of the three cases excepted by the general statute, herein-after to be considered.

The act in question is said to be in violation of that clause of sec. 1, art. XIV of the amendments to the constitution of the United States, which declares that "no state shall . . . deprive any person of . . . property without due process of law." The expositions of that clause by the supreme court of the United States are so recent as to require nothing more than a statement of the conclusions there reached, and some of the reasons there given. *Hagar v. Reclamation District*, 111 U. S. 701; *Kentucky Railroad Tax Cases*, 115 U. S. 321.

In the first of these cases it is, in effect, held that the clause of that section quoted was not infringed by a state law authorizing the imposition of a tax or assessment upon property according to its value, if the owner has an opportunity to question the validity or the amount of it, either before that amount is determined, or in subsequent proceedings for its collection. It is there said by Mr. Justice FIELD, in effect, that what constitutes "due process of law" may be difficult to define with precision, so as to cover all cases; that it is wiser "to arrive at its meaning by the gradual process of judicial inclusion and exclusion, as cases presented for decision shall require, with the reasoning on which such decisions may be founded." Pages 707, 708. It means that those general rules established in our system of juris-prudence for the security of private rights must be ob-served. *Ibid.* The learned justice then observed: "Un-doubtedly, where life and liberty are involved, due process requires that there be a regular course of judicial proceed-ings, which imply that the party to be affected shall have notice and an opportunity to be heard; so, also, where title or possession of property is involved. But where the taking

of property is in the enforcement of a tax, the proceeding is necessarily less formal; and whether notice to him is at all necessary may depend upon the character of the tax and the manner in which its amount is determinable. The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments. . . . Respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or some of these; and if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law;' but if found to be arbitrary, oppressive, and unjust, it may be declared to be not 'due process of law.' The power of taxation possessed by the state may be exercised upon any subject within its jurisdiction, and to any extent not prohibited by the constitution of the United States. . . . Of the different kinds of taxes which the state may impose, there is a vast number of which, from their nature, no notice can be given to the tax-payer, nor would notice be of any possible advantage to him,—such as poll-taxes, license taxes (not dependent upon the extent of his business), and, generally, specific taxes on things or persons or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is an end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the tax-payer. No right of his is therefore invaded." Pages 708, 709. " Where a tax is levied on property not specifically, but according to its value, to be ascertained by assessors appointed for that purpose upon

such evidence as they may obtain, a different principle comes in. The officers, in estimating the value, act judicially, and in most of the states provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law to hear complaints respecting the justice of the assessments. The law in prescribing the time when such complaints will be heard gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law. In some states, instead of a board of revision or equalization, the assessment may be revised by proceedings in the courts, and be there corrected if erroneous, or set aside if invalid; or objections to the validity or amount of the assessment may be taken when the attempt is made to enforce it. In such cases all the opportunity is given to the tax-payer to be heard respecting the assessment which can be deemed essential to render the proceedings due process of law." Page 710.

That opinion was sanctioned by the unanimous court, and followed in the more recent case cited, where it was said by Mr. Justice MATTHEWS that it had been repeatedly decided by that court " that the proceedings to raise the public revenue by levying and collecting taxes are not necessarily judicial, and that 'due process of law,' as applied to that subject, does not imply or require the right to such notice and hearing as are considered to be essential to the validity of the proceedings and judgments of judicial tribunals. *Notice by statute* is generally the only notice given, and that has been held sufficient." Page 331.

In this state the supervisors, clerk, and assessors of each town, constitute a "board of review" for such town. Sec. 1060, R. S. It was first established under that name by sec. 24, ch. 130, Laws of 1868; and hence, if that had been

its origin, it would be of no significance here. But by sec. 22, ch. 167, Laws of 1859, the "assessor, together with the chairman of supervisors and clerk of each town" were constituted a town "board of equalization, to equalize the assessment of real property for such town." The same section required each member of the board to "take an oath fairly and impartially to equalize the assessment of the real property of said town," and required notice of "the time and place of the meeting of such equalization board" to be given to each of its members; and also required the posting of "notices of said meeting at least five days prior to such meeting, in not less than five public places in such town;" and provided for the hearing of claims of inequalities in the assessment, and for the correction of errors. The same act provided for a "county board of equalization" (sec. 25), and a "state board of equalization" (sec. 28). Said section 22 was amended, but continued, in substance, by subd. 11, sec. 1, ch. 295, Laws of 1860. Here the taxes in question were upon specific property, to wit, the land in question, and the several notices required by the statutes, including the notice of sale, must be regarded as "due process of law," within the meaning of the constitutional clause in question.

If, as suggested by counsel, any of the 240 acres of land in question were not, when any of said taxes were assessed thereon, liable to taxation, or such taxes thereon had been paid, or the lands had been redeemed from such taxes, then we perceive no reason why the land-owner might not have brought his action to restrain the collection of the tax, or the sale of the land, or to set aside any of said tax certificates, especially within the two years given by ch. 132, Laws of 1866. In such action all the opportunities were given to the tax-payer, to use the language of one of the cases quoted, "to be heard respecting the assessment which can be deemed essential to render the proceedings due process of law." Besides, it may be questionable whether, in

either of the three cases named, such action would be barred within the two years mentioned, since they were excepted from the general statutes of limitation, and hence may possibly be regarded as excepted from that provision. See sec. 6, ch. 138, Laws of 1861; secs. 1189, 1210*f*, R. S.; *Smith v. Sherry*, 54 Wis. 129. But there is no claim here that the lands in question were not liable to taxation, nor that the taxes were paid or redeemed. It is mentioned merely in consequence of the suggestion of counsel as to the land being taken without "due process of law," which, as we have seen, was not the case. There seems to be no doubt but what a statute wholly prospective might vest the legal title in the purchaser upon the sale, even without deed. Cooley on Taxation (2d ed.), 464.

Another question involved is whether, when applied to certificates held by the county at the time of the passage of the act in question, it was competent for the legislature to divest the original owner of the legal title, and vest the same in the county without deed, and by the mere operation of the act and the failure to redeem within the two years limited. The question is entirely new, so far as this court is concerned. It is not the case of a simple forfeiture without any sale; yet there are respectable authorities upholding such legislation. Thus, in *Usher's Heirs v. Pride*, 15 Grat. 190, lands returned delinquent for nonpayment of taxes between 1820 and 1831 were forfeited by the act of April 1, 1831, if not redeemed within a time fixed, which was not done, and it was held that the forfeiture became complete at the end of the period fixed, and could only be released by redemption in the mode provided by statute. It was also held in that case that the heir of a patentee of land forfeited for nonpayment of taxes, and not redeemed, could not maintain ejectment for it against a party who had entered upon it peaceably, though the tenant had no title to the land. The validity of such legislation had pre-

viously been established in Virginia, though formerly denied. *Staats v. Board,* 10 Grat. 400; *Wild's Lessee v. Serpell,* id. 405; *Hale v. Branscum,* id. 418; *Smith v. Chapman,* id. 445. To the same effect are *Hodgdon v. Wight,* 36 Me. 326; *Adams v. Larrabee,* 46 Me. 518; *Tolman v. Hobbs,* 68 Me. 316; Cooley on Taxation (2d ed.), 461–466. In some of these cases it was held, in effect, that the necessity for inquest of office found might be dispensed with by stat-. ute. In Kentucky this doctrine was apparently recognized in *Harlan's Heirs v. Seaton's Heirs,* 18 B. Mon. 312, but denied in *Marshall v. McDaniel,* 12 Bush, 378. But even that case is distinguishable from this, for there the land was never "stricken off to the state," and the supposed forfeiture was never "perfected by a proceeding made a matter of record." The validity of our statute providing for the forfeiture and sale of public lands for "the nonpayment of interest when due, according to the terms of the certificate of sale," does not seem to have been doubted, and has often been recognized. Sec. 224, R. S.; Sanb. & B. Supp. R. S. 52, and cases there cited; *State ex rel. Crampton v. Commissioners of S. & U. Lands,* 14 Wis. 345; *Conklin v. Hawthorn,* 29 Wis. 476.

Of course, the purchase of the lands by the county at the tax sales in question only gave it the usual rights of a purchaser. When ch. 132, Laws of 1866, went into effect, April 25, 1866, the county had already bid off the 240 acres of land on four successive sales. Such sale, of itself, worked a forfeiture subject to redemption. *Biggins v. People,* 106 Ill. 271. The county was then entitled to a tax deed on the first sale. By virtue of such purchase and right to a tax deed, it then held the equitable title. *Eaton v. Sup'rs Manitowoc Co.* 44 Wis. 492. It then might have acquired the legal title by proper tax deed upon the certificates it held. But the legal title, with the right of redemption, was still in the original owner. In that condition of things, the

person holding the legal title and right of redemption was informed by the enactment that if he allowed another sale to the county, and failed for two years to redeem from any of the five sales, then the title should absolutely vest in the county. A few days after the act went into effect another sale did occur, and the land was again bid off by the county. The two years were allowed to pass after the act went into effect without any redemption being made from any of the five successive sales. Such were the events which the act declared should absolutely vest the title in the county, and, when so vested, it should not longer be liable to assessment for taxes of any kind or description. It was so withdrawn from further assessment until claimed by another under such forfeiture. The plaintiff claiming under the original owner who thus failed to pay his taxes is now seeking to recover. It is to be remembered that ch. 132, Laws of 1866, was enacted for the very purpose of enforcing the collection of such unpaid taxes. The right and obligation of the county to purchase at tax sales, and to take title to land under tax proceedings, were given and required wholly by statute. These things being so, it would seem to logically follow that the essential requisites, and the time for vesting the title, must necessarily be dependent entirely upon the wording of the statutes. Here the usual tax sales had been had for five successive years. The usual tax certificates had been issued for five successive years. Nothing remained, April 25, 1868, to complete the title of the county, independent of the act in question, but the execution and recording of a tax deed. It was then entitled to three such deeds. At the time ch. 132, Laws of 1866, was enacted, no notice was required to be given to the occupant, nor any affidavit of non-occupancy. The county was entitled to two of such deeds before the enactment requiring notice to occupants, and three before the enactment requiring an affidavit of non-occupancy. The clerk of the board of super-

visors was required at once to issue such deeds on demand.
Sec. 25, ch. 22, Laws of 1859; ch. 460, Laws of 1864; sec.
1176, R. S.    In issuing such deed or deeds the clerk would
have acted ministerially.    Sanb. & B. Supp. R. S. 249, and
cases there cited.    Upon one being issued in proper form,
and recorded, the title would have vested in the county.
No judicial proceedings would have been required to per-
fect the title.    It was only such ministerial act of the clerk
that was dispensed with after two years and a failure to
redeem, by ch. 132, Laws of 1866, in the cases covered by it.
But that ministerial act of the clerk had before been essen-
tial only because it was required by statute.    Having been
required wholly by statute, we perceive no valid objection
to its being dispensed with at the end of two years by stat-
ute.    No substantial right was thereby abridged.    No title
was thereby divested.    Full opportunity was given to re-
deem.    Had the owner redeemed prior to April 25, 1868,
then the case would not have come within the provisions of
the act, and in that event the title would not have been
divested by it.    The same would have been true had the
taxes upon which the sales were made been previously paid.
Each such case might well be claimed to have come within
the general exception stated.    The same would be true if
the lands had not been liable to taxation.

We must hold that it was competent for the legislature
to dispense with the execution of a tax deed in the cases
coming within the provisions of ch. 132, Laws of 1866, and
in such cases to vest the title in the county at the end of
the two years.    The numerous cases involving the same
questions here presented, said to be pending, may have in-
duced unnecessary prolixity in this opinion.

ORTON, J.    I am unable to agree with my brethren, and
therefore most respectfully dissent from the opinion and de-
cision to the effect that the title to the lands the plaintiff

failed to recover for that reason, was vested in the county of Marathon. Whether it was so vested depends upon the meaning of the words "remains unredeemed," in ch. 132, Laws of 1866, which provides "that when any lot or tract of land shall be, or shall have been, for five successive years, sold for taxes, and bid in for the county, and *remains unredeemed*, the title thereof shall absolutely vest in the county where such lot or tract of land is situate, and, when so vested, shall not be liable to assessment for taxes of any kind or description." This is as far as any statement of the question ought to go, in order that an opinion upon it shall not be influenced by any extraneous matters or subsequent events or intervening interests. When the law was passed, what did these words mean, or what were they intended to mean? I feel quite sure that any person who simply reads this statement would say unhesitatingly that these words mean "and remains unredeemed" as provided by law, or unredeemed "within three years from the date of the certificate of sale," as provided in sec. 1165, R. S., and that they cannot have any other reasonable meaning.

What do these words, or other equivalent words, mean, when used in other parts of our statute? Sec. 1176, R. S., after providing the time and terms of sale and redemption, authorizes a deed to be issued to the purchaser of the lands so "remaining unredeemed." Sec. 1178, in prescribing the form of a tax deed, requires it to be stated in the preamble "that said lands are *now unredeemed*" from such sale. Sec. 1191, R. S., provides that "when the county takes a tax deed on a certificate of sale, and it holds tax certificates of sale, *unredeemed*, on the same property, *for two successive years* subsequent to the date of sale on which the deed issues, including certificates prior to these statutes, it shall thereafter be exempt from taxes until sold by the county." This use of the word "unredeemed" will be found precisely analogous when we speak of the meaning given to it in the

opinion of the court. It will be observed that this statute confers absolute title upon the county, instead of issuing a deed to the county as provided for in sec. 1194, R. S. The language of that section is: "When any lands upon which the county holds a tax certificate *shall not be redeemed* as provided by law," then the clerk is authorized to issue a deed to the county. Here the statute is, in effect, when any county holds a tax certificate of lands sold for taxes, which *remains unredeemed*, the title thereof shall absolutely vest in the county. Is there any difference in the meaning of "shall not be redeemed" and "remains unredeemed" in these two similar statutes? Sec. 3017: "If, after the expiration of fifteen months from the time of sale of any real estate on execution, any part of the premises *shall remain unredeemed* by the judgment debtor," a deed is made. But, again, in the same section: "If any part of said premises *remains unredeemed* by a creditor, the same shall be conveyed," etc. Here the language is precisely the same, and nothing said about the time of redemption. But the time of redemption by a creditor is fixed by sec. 3007 at fifteen months after the sale. So, here, the time of redemption on tax sale is fixed in sec. 1165, R. S., and "remains unredeemed" has reference to such other provision, in both cases alike, and means unredeemed as provided by law. Sec. 3027 provides that "all sales of real estate heretofore made by virtue of any execution," etc., "*when not redeemed,* shall be conveyed," etc. Is it possible that the words in controversy can have any other meaning than the same or equivalent words in all other statutes? There is nothing in the context or other parts of the law under consideration that indicates any different meaning. But these words are so construed in the opinion that they mean unredeemed in fact, without reference to the time of redemption fixed by law, whether that time has expired or not.

Just as soon as the fifth or last year's sale is made to the

Baldwin vs. Ely and others.

county, the absolute title of the land vests in the county as land that "remains unredeemed," when there has not been a moment of time for redemption. That was not the case here, it is true, for here a considerable part of the time of redemption on the fifth year's sale had expired; but the construction would be the same whether a less time or none at all had expired of the three years time of redemption. If the words mean unredeemed in fact, then time, short or long or none at all, is not concerned. The word "remains" presupposes and implies something that exists or continues after some other time or event,— "remains" unredeemed after the expiration of the time of redemption. It means this, or means nothing. Not redeemed, or simply unredeemed, would be the better form of expression, if there is no reference to any time past. But it is too plain for argument. What is the necessity of forcing such a meaning upon these plain words? Cannot the county wait, before being clothed with such an absolute title, until the expiration of the regular three years time of redemption on the fifth or last year's sale? What is the great emergency?

Before the three years time of redemption had expired on the fifth year's sale in this case, this very bad law, which sought to confiscate the lands of private owners whether lawfully assessed or sold for taxes or not, was *repealed*, and the county, or perhaps some speculator who has bought these ·lands from the county, is now attempting to obtain this absolute title by such a false and forced meaning of these words, so plain and common in all the statutes. Such a construction of the law deprives the owner of these lands of numerous legal and constitutional rights which he had at the time of the sale. A sale is a matter of contract, and these rights become a part of the contract of sale, by which he may redeem within three years, and have certain notices given him before his title is vested in the county or purchaser. But I care not to give any reasons against

such a construction except the plain common sense and obvious meaning of the words of the law.    When the words of a statute are plain and unambiguous, there is no room or chance for construction.    This is in form a general law, but it was intended to have special application to the county of Marathon.    The law was repealed too soon to give that county the benefit intended by the expiration of the statutory time of redemption on the fifth year's sale, and hence this most unreasonable construction is the only hope and chance.    If the law had not been repealed, no such case as this would have ever been in the courts, for there would have been no necessity for it.    The time of redemption fixed by law had not expired on the sales of all these five successive years, and the lands did not remain unredeemed, and therefore the title to them had not vested in the county of Marathon, and the plaintiff should have recovered them in this action.

*By the Court.*— The judgment of the circuit court is affirmed.