LOMBARD, Appellant, vs. WHITE and another, Respondents.

*March 21 — April 8, 1890.*

*Tax sales: Redemption: "Marathon county lands:" Statute vesting title in county: Irregularities in tax proceedings.*

1. Lands in Marathon county, subject to taxation, were sold for taxes and bid in by the county in each of the years 1862 to 1866 inclusive, and were not redeemed within two years after the enactment of ch. 132, Laws of 1866. *Held,* that under that act the title absolutely vested in the county. *Baldwin v. Ely,* 66 Wis. 171, followed.

2. The title to such lands having "absolutely vested in the county," under the act of 1866, the original owner was barred thereby from controverting such title on the ground of prior irregularities in the tax proceedings; and ch. 301, Laws of 1885, gave him no such right.

APPEAL from the Circuit Court for *Monroe* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action of ejectment to recover 440 acres of land described in the complaint, which is in the usual form, and which lands form a portion of those known as the "Marathon County Lands." The plaintiff claims title as the original owner under mesne conveyances from the United States. The defendant *White* claims title from the state of *Wisconsin* and Marathon county. The answer denies each and every allegation of the complaint, and alleges, in effect, that the lands described in the complaint were in the year 1859, and for six successive years thereafter, subject to taxation; that they were assessed and taxed, and the taxes were not paid nor redeemed, and that in 1862, 1863, 1864, 1865, and 1866, respectively, the said lands were sold at the time appointed by law for such delinquent taxes, and bid in by the county of Marathon, and certificates issued upon such sales to said county; that they

remained unredeemed from said taxes for more than two years after April 25, 1866, and that the title to said lands thereby became vested in said county of Marathon. The answer also sets up the several statutes of limitation, including ch. 132, Laws of 1866, and ch. 325, Laws of 1881; also a tax deed taken on said lands, May 7, 1864, and recorded on that day, on the sale of 1860; also the transfer, or attempted transfer, of said lands to the state by said county, under ch. 22, Laws of 1867, and other acts; and also the conveyance of said lands from the state and county to said *White*.

Upon the trial of said cause the parties waived a jury, and at the close of the trial the court found, as matters of fact, that the plaintiff was not the owner of said lands nor entitled to the possession of the same, and that the defendants had not withheld such possession from the plaintiff; and, as conclusions of law, that the defendants were entitled to judgment dismissing the complaint and for costs against the plaintiff; and ordered judgment to be entered thereon accordingly. From the judgment so entered the plaintiff appeals.

For the appellant there were briefs by *Neal Brown* and *L. A. Pradt*, attorneys, and *H. Bigelow*, of counsel, and oral argument by *Mr. Brown* and *Mr. Bigelow*.

For the respondents there was a brief signed by *Silverthorn, Hurley, Ryan & Jones*, attorneys for *White*, and *C. E. Estabrook*, Attorney General, for the *State of Wisconsin*, and the cause was argued orally by *T. C. Ryan* and *L. K. Luse*, Assistant Attorney General.

CASSODAY, J. The most important question here presented for consideration is whether the facts bring the case within the provisions of ch. 132, Laws of 1866, as construed by this court in *Baldwin v. Ely*, 66 Wis. 171. The first section of that act declared that "*whenever* any lot

or tract of land shall be or shall have been for *five successive years sold* for taxes, and *bid in for the county*, and *remains unredeemed, the title thereof shall absolutely vest* in the county where such lot or tract of land is situate, and, *when so vested*, shall *not be liable* to assessment for taxes of any kind or description." 66 Wis. 178. That act provided that it should take effect and be in force from and after its passage and publication. It was published April 25, 1866, and, of course, went into effect on that day. The words " remains unredeemed," found in the above quotation, were construed in that case as referring to the termination of the two years from and after such publication, mentioned in the third section of the act, as to all such tax certificates previously issued — that is to say, April 25, 1868. The decision in that case was to the effect that such two years, as to such tax certificates, operated as a statute of limitation upon the right to redeem or to contest the title on the ground of irregularity in the tax proceedings; and that at the termination of that period the title to such lands " absolutely vested in the county," and thereupon, and while so held by the county, ceased to be liable to taxation; or, as stated in the opinion in that case, the act " required (1) that the lot or tract of land should be sold for taxes for *five successive* years; (2) that it should be bid in for the county; (3) that it should remain unredeemed " April 25, 1868. " These three conditions were the only requisites therein contained for absolutely vesting the title in the county." 66 Wis. 182. It is further said in that case that " the authority of the legislature to shorten the time for redeeming from some of the certificates up to two years cannot be seriously questioned, under the numerous decisions of this court on the subject. The right to apply such shortened limitation to certificates which had already been issued cannot be doubted, under the same decisions." 66 Wis. 187. The validity of the act was there sustained upon the theory of its operating as a statute of limitation.

It is virtually conceded that the sales in the case at bar were in fact made in the same "five successive years," as in that case. There is no claim that the original owner redeemed from any one of them. On the contrary, it is virtually conceded that each remained unredeemed April 25, 1868. The only other condition which, by the terms of the act, was requisite to co-exist at that time in order to "absolutely vest" the title in the county, was that said lands, at each of said sales, were in fact bid in by the county. The learned counsel for the plaintiff contends that this does not appear. But the evidence fails to support such contention. The trial court, in effect, found that said lands were bid in, at each of said sales, by the county, and we are constrained to hold that such finding is sustained by the evidence. Thus it appears that the three conditions co-existed, April 25, 1868, which were requisite, in the language of the act, to "absolutely vest in the county" the title to the lands in question.

But it is contended that the act did not bar the original owner from subsequently controverting such title on the ground of prior irregularities. They liken the language quoted to the language of the general statute declaring that a tax deed "shall vest in the grantee an *absolute estate* in fee-simple in such land." Sec. 1176, R. S. But that language in that section is expressly qualified by the following: "*Subject*, however, to all unpaid taxes and charges which are a lien thereon, and to redemption as provided in this chapter; and such deed, duly witnessed and acknowledged, shall be *presumptive* evidence of the regularity of all the proceedings, from the valuation of the land by the assessor up to and including the execution of the deed." *Ibid.* Certainly, the words "absolute estate," as thus qualified by this section, have a very different significance from the *unqualified* words, "the title thereof shall absolutely vest in the county," as used in the act in question; especially when followed by the words, "*when so vested*" such lands "shall

not be liable to assessment for taxes of any kind or description."

No one would, for a moment, think of withdrawing such lands from taxation while the original owner retained an equity of redemption or the right to contest such title on the ground of irregularity in such tax proceedings. There is no pretense that the lands in question were not liable to taxation for each of the years for which the five successive sales were made. The result is (in accordance with the decision of the court in the case cited) we must hold that the complete title to those lands absolutely vested in the county, April 25, 1868. This bars the plaintiff from controverting such title by reason of prior irregularities, unless he has acquired the right to do so by virtue of ch. 301, Laws of 1885, requiring the county to issue tax deeds of such Marathon county lands to the state, and making the same "presumptive evidence of the truth of the recitals in such deeds contained, and of the regularity of all the proceedings from the valuation of the lands by the assessor up to and including the execution of the deeds," and making the same conclusive evidence in certain contingencies. It appears from the legislation of this state, as well as the decisions of this court, that the "Marathon county lands," so called, comprised over 40,000 acres. As already observed, ch. 132, Laws of 1866, only applied to such of those lands as had been sold for five such successive years, and each year bid in by the county, and then remained unredeemed April 25, 1868, and not even such of them as were owned by minors, persons *non compos mentis*, insane, or under guardianship. Thus the class of those lands to which that act applied was within very narrow limits, and the act was of short duration. 66 Wis. 186. To any one familiar with the legislation and decisions respecting the "Marathon county lands," which it is unnecessary here to repeat or refer to, it is very obvious that ch. 301, Laws of 1885, was never intended to

destroy or impair the title to such of those lands as had previously become vested in the county or the state, but to secure, if possible, in addition to its equitable right, the legal title which the state had lost by virtue of the defective wording of certain tax deeds. *Easley v. Whipple*, 57 Wis. 485; *Haseltine v. Hewitt*, 61 Wis. 121. It is purely a curative statute. Construed with reference to such purpose, and it is very plain that it applies only to cases where the original owner's legal title had not been divested, and not to cases where he had previously lost his legal title beyond reclaim, by virtue of ch. 132, Laws of 1866. We must hold that the plaintiff acquired no right to contest the title in question by virtue of ch. 301, Laws of 1885. The trial court was clearly right in holding that the plaintiff had no title to the lands in question.

*By the Court.*— The judgment of the circuit court is affirmed.